Robie, Acting P. J.
*1082 At the age of 19, defendant Montrell Woods shot Kenny Hernandez to death during a confrontation between the two men at an apartment complex. A jury found defendant guilty of second degree murder and of being a felon in possession of a firearm and also found he personally discharged a firearm causing death. The trial court sentenced defendant to a term of 15 years to life for the murder and to a consecutive term of 25 years to life for the firearm enhancement under Penal Code section 12022.53. At the time of defendant's sentencing, the enhancement statute provided that "[n]otwithstanding [Penal Code s]ection 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." (Former Pen. Code, § 12022.53, subd. (h).)
On appeal, defendant argues the trial court erred by failing to bifurcate the possession of a firearm charge from the murder charge, the court erroneously excluded evidence of the victim's propensity for violence, the prosecutor committed two acts *320 of misconduct, the court committed multiple instances of instructional error, and cumulative error resulted. Defendant also argues that his case must be remanded to the trial court so that he can make an adequate record for a future youth offender parole hearing and so that the trial court can exercise its discretion as to whether to strike the firearm enhancement based on a recent change to Penal Code section 12022.53 that took effect on January 1, 2018. *1083 In the unpublished portion of our opinion, we find no merit in defendant's claims of trial court error and prosecutorial misconduct. In the published portion of our opinion, we conclude that defendant already had sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing, but we agree that remand is necessary to allow the trial court to exercise its discretion as to whether to strike the firearm enhancement under the recent amendment to Penal Code section 12022.53.
FACTUAL AND PROCEDURAL BACKGROUND
On January 22, 2014, defendant shot Kenny Hernandez to death during a confrontation between the two men at an apartment complex. Three witnesses gave varying accounts of the shooting to law enforcement officers after the incident and at defendant's murder trial.
Hernandez's cousin, Claudia Pena, testified that on January 22, she, Hernandez, and his mother, Marta Garcia, were moving items Pena had stored for them from her second story apartment to the apartment the two recently moved into in the same apartment complex. During one of their trips, Hernandez walked down the stairs with a small table and boxes, and Pena walked behind him with two chairs. Garcia was behind Pena, also carrying some items. When Hernandez got to the bottom of the stairs, defendant came up fast on a scooter and hit Hernandez near his waist with the handlebar of the scooter. Pena testified that Hernandez told defendant in English, "Hey, be careful. Hey, be careful. You could hit a baby." Defendant then threw down his scooter, walked up to Hernandez, and used racial slurs. Hernandez put down the items he was carrying and responded, "What's your problem? I'm just telling you to be careful." Defendant then shot Hernandez once in the chest killing him.
In contrast to Pena's trial testimony, Sacramento County Deputy Sheriff Ryan Cervetti testified that after the murder Pena told him both defendant and Hernandez were yelling and cursing at each other before defendant shot Hernandez.
Garcia testified that defendant crashed into Hernandez with his scooter, and then Hernandez said something to defendant. Garcia did not completely understand what Hernandez said because it was in English, but she thought Hernandez told defendant to be careful. Defendant said something back to Hernandez that Garcia did not understand and then threw down his scooter. Defendant then walked toward Hernandez causing Hernandez to put down the items he was carrying. Hernandez did not say anything to defendant. Defendant said something else to Hernandez and then shot him. Throughout the whole incident, Hernandez did not appear angry but spoke loudly.
*1084 In contrast to Garcia's trial testimony, Sacramento County Deputy Sheriff Alex Lopez testified that after the murder Garcia told him defendant brushed up against Hernandez at the bottom of the stairs with his scooter. Defendant made "vulgar comments" to Hernandez, which made Hernandez angry and he "exchange[ ] words"
*321 with defendant before defendant shot him. Sacramento County Deputy Sheriff Juan Hidalgo testified that Garcia told him Hernandez and defendant exchanged words she did not understand, but she thought it was "an initiation of a fight." Garcia also told him that the two yelled at each other and that Hernandez "was going to go after [defendant] when this happened."
Defendant's mother, Linda Ellis, who also witnessed the incident, testified that as she walked down the stairs to take out the trash, she saw her son talking with a black man at the bottom of the stairs across from her. She had never seen the black man before but described him as being 23 or 24 years old with dreadlocks or braids and wearing a hat and a coat. Ellis also saw Hernandez throw trash bags down from the apartment above where defendant and the black man were standing. Hernandez then walked down the stairs with a bag and bumped into both defendant and the black man. Defendant told Hernandez to "watch out," and Hernandez responded, "What you say you bitch-ass nigger?" Hernandez then became enraged and ran toward defendant. Hernandez punched defendant in the face and backed him into a corner where defendant crouched down and shielded his face. Hernandez then kicked defendant three or four times in his face. Hernandez then suddenly fell into a nearby barbeque pit and did not get up. The black man left the area after Hernandez fell into the barbeque pit.
In contrast to Ellis's trial testimony, Sacramento County Sheriff's Detective Pam Linke testified that Ellis told her defendant and Hernandez argued and fought and that her son pushed Hernandez into a barbeque. Ellis never said Hernandez hit defendant or that there was a black man present for the fight. Following the incident, defendant did not have any injuries, bruises, or bleeding to his face, neck, or arms.
Defendant was 19 years old at the time of the murder. He was five feet two inches tall and suffered from an intellectual disability. Dr. Jeffrey Miller, a clinical psychologist, administered an IQ test to defendant, which determined his ability to intellectually function by testing his memory, thinking, and reasoning skills. Overall, defendant scored a 58, which placed him in the mild range of intellectual disabilities. A score below 70, however, constitutes a severe disability in terms of a person's ability to function on a daily basis. Because of defendant's disability, he learns at a very slow rate and is slow to understand and respond to external acts. Defendant functioned in life as a nine- to 11-year-old child would function.
*1085 At the time of his death, Hernandez was 5 feet 10 inches tall and weighed 188 pounds. Defendant sought to admit evidence of Hernandez's violent and aggressive character based on a police report that included statements from Garcia. According to the police report, Garcia told officers that Hernandez had been in a fight a month before his death with a group of black men who tried to "jump" him. He told the group, "[l]et's go one-on-one," which led to a fight between the biggest man in the group and Hernandez. Garcia also told the officer that her son was a good fighter.
During an Evidence Code section 402 hearing, Garcia testified that a month before the murder, a group of men approached Hernandez in a different apartment complex than the one where he was shot. The biggest man in the group started pushing Hernandez and Hernandez pushed him back. Garcia got in the middle of the men and told her son not to fight. The men then dispersed. Garcia stated that her son was not the type of person who was involved *322 in street fights or made disparaging comments about black people. She also did not remember telling officers that her son was a "good fighter." The trial court excluded this evidence because it did not show Hernandez had a propensity for violence and because it would constitute an undue consumption of time and potentially confuse the jury.
Before trial, defendant moved to exclude his 2013 felony conviction for possession of cocaine base. The court stated that it would not rule on the issue until it came up at trial because the court's decision depended on whether the parties stipulated that defendant had been convicted of a felony. The trial court noted that even with a stipulation, the fact of defendant's felon status would still be presented to the jury. The issue was never addressed again and the prosecution admitted defendant's certified record of conviction to prove that he was previously convicted of a felony. During the prosecution's rebuttal closing argument, the prosecutor argued defendant's plea agreement wherein he indicated that he understood the extent of his plea showed his mental impairment defense was unavailing. The prosecutor also stated that defense counsel "talk[ed] trash" and "[could not] back it up" after defense counsel argued the jury should convict defendant of voluntary manslaughter, but then also argued he did not commit the murder at all.
Among other instructions, the court instructed the jury on first and second degree murder, voluntary manslaughter based on heat of passion and imperfect self-defense, complete self-defense and the related principles of contrived self-defense and mutual combat, and mental impairment. The court did not instruct, nor did defense counsel request the jury be instructed, on involuntary manslaughter. Further, defense counsel did not request modification to the court's instructions, except to request that the jury be told it could consider defendant's mental impairment for the purpose of the objective component of *1086 the complete self-defense instruction. The trial court denied defendant's request, finding it was not supported by the law.
At sentencing, the trial court indicated it had reviewed defendant's 11-page probation report. Defense counsel stated he did not have anything to add to the report and that it contained no errors or omissions. Defense counsel also indicated he did not file any other documents with the court and that he had nothing to say before judgment was entered because the "probation report notated the mitigating factors that [he] would bring up." The court then sentenced defendant to a term of 40 years to life for murder and the associated gun enhancement and imposed a concurrent two-year term for being a felon in possession of a firearm.
DISCUSSION
I-VIII**
IX
Defendant Is Not Entitled To A Franklin Remand But Is Entitled To Remand For The Trial Court To Consider Striking The Firearm Enhancement
Defendant contends he is entitled to remand to the trial court because the record is not clear that he was afforded a sufficient opportunity to place evidence on the record necessary for his eventual youth offender parole hearing under Penal Code section 3051. The People respond that defendant was already afforded this *323 opportunity and failed to take advantage of it. We agree with the People.
In Franklin , the California Supreme Court noted that the Eighth Amendment of the United States Constitution prohibition against cruel and unusual punishment prohibits a criminal court from sentencing a minor "to the functional equivalent of [life without parole] for a homicide offense" without taking into account " 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison' " ( People v. Franklin (2016) 63 Cal.4th 261, 275, 276, 202 Cal.Rptr.3d 496, 370 P.3d 1053, quoting Miller v. Alabama (2012) 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407.) The court concluded, however, that a juvenile's claim that his sentence of 50 years to life was the functional *1087 equivalent of life without parole and thus unconstitutional was moot in light of recent statutory amendments that provided for parole hearings for youthful offenders. ( Franklin , at p. 268, 202 Cal.Rptr.3d 496, 370 P.3d 1053 ; see Pen. Code, § 3051, subd. (a)(1) [A "youth offender parole hearing" is held "for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger, or was under 18 years of age as specified in paragraph (4) of subdivision (b) at the time of his or her controlling offense"] and § 4801, subd. (c) [at a youth offender parole hearing, the Board of Parole Hearings "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law"].) The court explained, "Consistent with constitutional dictates, those statutes provide [the juvenile] with the possibility of release after 25 years of imprisonment [citation] and require the [parole board] to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity.' " ( Franklin , at p. 268, 202 Cal.Rptr.3d 496, 370 P.3d 1053.)
Because the enactment of the statutes meant that the juvenile was "now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration," his sentence was "neither [life without parole] nor its functional equivalent" and "no Miller claim arises." ( People v. Franklin , supra , 63 Cal.4th at pp. 279-280, 202 Cal.Rptr.3d 496, 370 P.3d 1053.) Although the court in Franklin held that the juvenile offender "need not be resentenced," the court remanded "the matter to the trial court for a determination of whether [the juvenile] was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing" because it was "not clear" whether the juvenile had been afforded such an opportunity previously. ( Id . at p. 284, 202 Cal.Rptr.3d 496, 370 P.3d 1053.)
The court advised, "If the trial court determines that [the juvenile] did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 [of the Penal Code] and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. [The juvenile] may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances *324 at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors [citation] in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law.' " ( People v. Franklin , supra , 63 Cal.4th at p. 284, 202 Cal.Rptr.3d 496, 370 P.3d 1053.) *1088 Here, defendant points out that "[n]o mention of youth-related factors or indeed any significant arguments on mitigating factors was made on the record at sentencing," "[t]he probation report contains no statements or letters from [defendant] or his family," and "as to mitigating factors the report states 'none' except youthful age (then 21)." From this, defendant concludes that " 'the probation report and sentencing transcript, together, do not remotely address all five ... youth sentencing factors that the parole authority must give weight to in assessing whether to release [defendant] on parole,' " and therefore " ' "it is not clear whether [the defendant] had sufficient opportunity to put on the record the kinds of information that [Penal Code] section[s] 3051 and 4801 deem relevant at a youth offender parole hearing." ' " For that reason, he requests " 'a modest limited remand' " " 'to afford [him] such an opportunity if the court finds he was not afforded one at the original sentencing.' "
We are not persuaded that defendant is entitled to a remand under Franklin .[2] Unlike the defendant in Franklin , defendant was 19 years old at the time of his offense and thus he was not subjected to a sentence that violated constitutional principles prohibiting a minor from being sentenced to the functional equivalent of life without parole without considering how minors are different from adults and how those differences counsel against irrevocably sentencing a minor to a lifetime in prison. Moreover, unlike the defendant in Franklin , defendant was not sentenced at a time when youth offender parole hearings were not yet part of California law. Defendant is entitled to a youth offender parole hearing under Penal Code section 3051, but not because he was sentenced to the functional equivalent of life without parole for a crime committed when he was a minor. Rather, he is entitled to a youth offender parole hearing only because the California Legislature decided, effective beginning in January 1, 2016, that youth offender parole hearings should be afforded to "any prisoner who was under 25 years of age or younger or was under 18 years of age as specified in paragraph (4) of subdivision (b) at the time of his or her controlling offense." ( Pen. Code, § 3051, subd. (a)(1), as amended by Stats. 2017, ch. 675, § 1.) Thus, unlike the situation in Franklin , when defendant was sentenced in this case on April 8, 2016, Penal Code section 3051 was already in place and had already been amended to encompass offenders like him under 25 years of age or younger, and subdivision (c) of Penal Code section 4801 already identified the various factors to be considered at a youth offender parole hearing. Thus unlike the *1089 defendant in Franklin, defendant had both the opportunity and incentive to put information on the record related to a future youth offender parole hearing. *325 Under these circumstances, there is no reasonable basis for concluding, as defendant argues, that defendant was denied a sufficient opportunity to put on the record the kinds of information that Penal Code sections 3051 and 4801, subdivision (c) deem relevant at a youth offender parole hearing. It is true, as defendant notes, that defendant's sentencing hearing occurred before our Supreme Court decided Franklin , but that makes no difference given that it was not the decision in Franklin that gave rise to defendant's right to a youth offender parole hearing. Instead, as we have explained, it was the amendment to Penal Code section 3051 that took effect months before defendant's sentencing hearing that gave rise to that right, and on the record here there is no reason to believe that defense counsel did not have every reasonable opportunity and incentive to make an adequate record for defendant's eventual youth offender parole hearing. (See People v. Cornejo (2016) 3 Cal.App.5th 36, 68-70, 207 Cal.Rptr.3d 366 [remand not necessary when the defendants were given an opportunity to make a record and provided relevant information for an eventual youth offender parole hearing].)
During defendant's sentencing hearing, the court asked defense counsel multiple times whether he wanted to add anything to what was contained in the 11-page probation report. Defense counsel said that he had nothing to add to the probation report, including documents, and the probation report contained no errors or omissions. Further, defense counsel stated that the "probation report notated the mitigating factors that [he] would bring up." The probation report included information regarding defendant's psychological and medical problems, along with a summary of Dr. Miller's report. This summary included details of defendant's home life, education, psychiatric treatment, criminal history, and IQ test.
Given the trial court's numerous invitations to defense counsel to add information to the record and defense counsel's statements that the probation report was sufficient, we conclude defendant "was afforded sufficient opportunity to make a record of information relevant to [defendant's] eventual youth offender parole hearing." (See People v. Franklin , supra , 63 Cal.4th at p. 284, 202 Cal.Rptr.3d 496, 370 P.3d 1053.) Thus, there is no basis for a Franklin remand here.
Defendant further argues, however, that under a recent change to Penal Code section 12022.53, his case must be remanded so that the trial court can exercise its newly-granted discretion to decide whether to strike the firearm enhancement imposed here. The People concede that such a remand is required, and we agree.
*1090 As we have noted, defendant's sentence in this case includes a sentence enhancement of 25 years to life under subdivision (d) of Penal Code section 12022.53 for personally and intentionally discharging a firearm and proximately causing death to a person other than an accomplice. At the time of his sentencing, the trial court had no power to strike the firearm enhancement or impose a sentence other than 25 years to life. Under a recent amendment to Penal Code section 12022.53, however, which is effective January 1, 2018, trial courts will have the power under subdivision (h) of the statute, "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."
Defendant contends this amendment applies to his case because the Legislature *326 expressly provided for the retroactive application of the amendment "by specifying the new rule applies to 'any resentencing that may occur.' " He further contends, based on In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948, and related cases, that the amendment applies to him because "regardless of statutory intent, settled case law affords defendants in non-final cases the retroactive benefit of subsequent legislative ameliorations in punishment."
The People agree that because the amendment provides discretion to impose a lesser sentence, and because there is nothing in the amendment to suggest the Legislature intended it to apply prospectively only, the presumption that the amendment applies retroactively prevails. The People do not argue that remand in this instance would be futile (see People v. Gutierrez (1996) 48 Cal.App.4th 1894, 1896, 56 Cal.Rptr.2d 529 ), but instead agree that here the case must be remanded to allow the trial court to exercise its newly-granted discretion to decide whether to strike the firearm enhancement.
We agree with defendant and the People that remand is appropriate here. Under Estrada , "when a statute mitigating punishment becomes effective after the commission of the prohibited act but before final judgment the lesser punishment provided by the new law should be imposed in the absence of an express statement to the contrary by the Legislature." ( People v. Francis (1969) 71 Cal.2d 66, 75-76, 75 Cal.Rptr. 199, 450 P.2d 591.) As the Supreme Court stated in Estrada , "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." ( In re Estrada , supra , 63 Cal.2d at p. 745, 48 Cal.Rptr. 172, 408 P.2d 948.)
*1091 Here, the amendment to subdivision (h) of Penal Code section 12022.53, which will take effect before the judgment in this case is final, necessarily reflects a legislative determination that the previous bar on striking firearm enhancements was too severe, and that trial courts should instead have the power to strike those enhancements in the interest of justice. Moreover, because there is nothing in the amendment to suggest any legislative intent that the amendment would apply prospectively only, we must presume that the Legislature intended the amendment to apply to every case to which it constitutionally could apply, which includes this case. Accordingly, remand is appropriate in this case to allow the trial court to exercise its discretion as to whether to strike the firearm enhancement.[3]
*327 DISPOSITION
Defendant's conviction is affirmed, but the case is remanded to the trial court for further proceedings consistent with this opinion.
We concur:
Butz, J.
Duarte, J.
Certified for Partial Publication.*

Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I through VIII of the Discussion.

See footnote *, ante .

We previously issued an opinion in this case reaching the same conclusion, but the Supreme Court granted defendant's petition for review and transferred the case back to us "with directions to vacate [our] decision and reconsider whether defendant is entitled to make a record before the superior court of 'mitigating evidence tied to his youth' in light of" Franklin and Penal Code sections 3051 and 4801, subdivision (c). Having reconsidered the issue, we reach the same conclusion we reached before.

Although we are remanding the case specifically to allow the trial court to exercise its discretion under the recent amendment to subdivision (h) of Penal Code section 12022.53, our determination that defendant is not entitled to remand under Franklin does not necessarily preclude the trial court from supplementing the record for purposes of defendant's eventual youth offender parole hearing, should defendant ask to do so and should the trial court determine that such supplementation would be appropriate. Indeed, it may well be that information offered to the trial court to assist in its determination of whether to exercise its discretion to strike the firearm enhancement will be the same sort of information that would be offered under a Franklin remand in any event. Accordingly, we leave it to the trial court in the first instance to decide what additional information may be entered into the record on remand.