Filed 3/5/21  P. v. Delgado CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C084090 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF151212 ) |
| v. | |
| FRANCISCO GENARO DELGADO, | |
| Defendant and Appellant. | |

In February 2015, defendant Francisco Genaro Delgado was in an altercation with his ex-girlfriend, M.G, and N.S.  During the incident, defendant pointed a handgun at M.G. and shot N.S.  Defendant was convicted of multiple charges related to the incident, including two counts of assault with a semi-automatic weapon, with enhancements for personal use of a firearm.  (Pen. Code, §§ 245, subd. (b), 12022.5, subd. (a).)[1]  The trial court sentenced defendant to an aggregate prison term of 30 years 4 months.

---

[1]  Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

1

On appeal, his sole contention is that the matter should be remanded to permit the trial court to exercise its discretion to strike the firearm enhancements, pursuant to section 12022.5, subdivision (c). The People concede section 12022.5, subdivision (c) applies retroactively, but argue it would be futile to remand the matter.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

M.G. and defendant dated for seven years and had a son together. Defendant repeatedly accused M.G. of cheating on him.

On February 28, 2015, after arriving to babysit, defendant demanded to know from M.G. who she was romantically involved with, so M.G. asked him to leave. Defendant went through her phone and grew increasingly angry. He demanded she not text with N.S. He then hit her in the face with her phone, resulting in a welt on her right temple and a bump on her left cheekbone.

Later, defendant called N.S. and asked him to come over so they could talk, and N.S. agreed. After N.S. arrived, defendant accused him of being romantically involved with M.G., but N.S. denied any relationship. The two men fought. Defendant pulled a nine-millimeter semiautomatic handgun from his waistband, put it against N.S.'s neck and told him to sit down. N.S. complied.

Defendant, who was two feet away from M.G., pointed the gun at her and demanded she unlock her phone. Thereafter, defendant shot N.S. in the back of his neck, with the bullet going through his shoulder. The impact blew N.S. off the bar stool. N.S. ran out to the parking lot, collapsed, and called 911. Defendant fled.

N.S. was hospitalized for nine days and required surgery for the gunshot wound. He was unable to use his arm for 10 months after the incident. He testified he was aware defendant had other guns, including an AR-15 assault rifle and a .38-caliber revolver. N.S. testified he had arranged defendant's purchase of the semiautomatic handgun defendant used to shoot him.

M.G. testified that her son was in the bedroom when the fighting began. The boy came into the front room, but M.G. took him back to the bedroom before the shooting.

The prosecution introduced evidence of prior acts of domestic violence against M.G. On September 14, 2014, M.G. and defendant got into an argument and he grabbed M.G. by the throat. When M.G. fell back on the bed, defendant put his elbow on her jaw as M.G. tried to free herself from his grip. Defendant threatened to kill M.G. M.G.'s parents arrived and found M.G. screaming. Defendant ran out the door and threatened M.G.'s stepfather. Defendant pleaded no contest to spousal battery and criminal threats.

On November 7, 2014, M.G. called police to report that defendant was harassing her and violating a restraining order by coming into her home and refusing to leave. He also showed up at her workplace.

On November 12, 2014, defendant entered through M.G.'s sliding door while she was sleeping and demanded to know who she was romantically involved with. Defendant returned the next morning and again appeared in her bedroom uninvited, asking the same question.

On November 14, 2014, M.G. told police that defendant had tried to get into her apartment on November 8. She had added a top lock to her door.

On November 15, 2014, defendant was arrested for violation of a restraining order.

### Verdict and Sentencing

The jury found defendant guilty of two counts of assault with a semiautomatic firearm (§ 245, subd. (b); count 2 (Victim N.S.) and count 4 (Victim M.G.)), inflicting corporal injury on a parent of his child (§ 273.5, subd. (a); count 3 (Victim M.G.)), three counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts 5-7), and unlawfully possessing ammunition (§ 30305, subd. (a); count 8). With respect to counts 2 and 4, the jury also found true that defendant used a firearm during the commission of a felony. (§ 12022.5, subd. (a).) As to count 2, the jury also found true that defendant

personally inflicted great bodily injury.  (§ 12022.7, subd. (a).)  With respect to count 3, the jury also found true the prior domestic violence enhancement.  (§ 273.5, subd. (f)(1).)

The trial court sentenced defendant to an aggregate state prison term of 30 years four months, calculated as follows:  the upper term of nine years for count 2 (Victim N.S.) (§ 245, subd. (b)) plus the upper term of 10 years for the firearm enhancement (§ 12022.5, subd. (a)) and three years consecutive for the great bodily injury enhancement (§ 12022.7, subd. (a)); 16 months consecutive (one-third the midterm) for count 3 (Victim M.G.) (§ 273.5, subd. (f)(1)); two years consecutive (one-third the midterm) for count 4 (Victim M.G.) (§ 245, subd. (b)) plus 16 months consecutive (one-third the midterm) for the firearm enhancement (§ 12022.5, subd. (a)); eight months consecutive (one-third the midterm) each for counts 5, 6, and 7 (totaling two years) (§ 29800, subd. (a)(1)); and eight months consecutive (one-third the midterm) for count 8 (§ 30305, subd. (a)).  In a separate case involving a violation of probation (case No. 14-4694), the trial court also sentenced defendant to one year consecutive plus 180 days concurrent.

In selecting the upper term for the principal offense involving the shooting of N.S. and the firearm use enhancement, the trial court stated "the biggest thing" was to isolate defendant so as to prevent him from committing more crimes.  The trial court expressly stated defendant was "a danger to society, and it's a great concern to be so easily provoked into taking a gun and committing a crime like this."  The court noted that defendant shot N.S. "pointblank" and personally inflicted great bodily injury, with a child present who had seen "enough of it" to be "reasonably" traumatized.  The crime involved "extreme violence," with a "vulnerable" victim who had been "baited and brought over by the defendant."  Defendant had also violated a restraining order to enter M.G.'s apartment, while carrying a gun.  In addition, defendant had a history of domestic violence, was on probation at the time and "repeatedly disregard[ed]" court orders.  The

4

police later found three firearms, including an AR-15 and the nine-millimeter defendant used to shoot N.S.

## DISCUSSION

Senate Bill No. 620, which went into effect on January 1, 2018 (Stats. 2017, ch. 682, §§ 1-2 (S.B. 620)), amended section 12022.5 to remove the bar on striking a firearm enhancement and grant the trial court discretion pursuant to section 1385 to strike or dismiss an enhancement. "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." (§ 12022.5, subd. (c).)

We agree with the parties that S.B. 620 is retroactive since his case was not final when the statutory authorization to strike or dismiss firearm enhancements became effective. (*People v. Chavez* (2018) 22 Cal.App.5th 663, 712; *People v. Robbins* (2018) 19 Cal.App.5th 660, 679; *People v. Woods* (2018) 19 Cal.App.5th 1080, 1091.)

Defendant asserts that this case must be remanded to the trial court to permit the court to exercise its discretion to strike the firearm enhancements under S.B. 620. The People contend that remanding for resentencing in this case would be futile and inappropriate, based on the trial court's comments in imposing the upper term for the principal count and accompanying firearm enhancement. We agree with the People.

"[R]emand is required unless the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken a firearm enhancement." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) "The trial court need not have specifically stated at sentencing it would not strike the enhancement if it had the discretion to do so. Rather, we review the trial court's statements and sentencing decisions to infer what its intent would have been." (*People v. Jones* (2019) 32 Cal.App.5th 267, 273 [concluding remand for exercise of discretion to strike or dismiss serious felony enhancement under S.B. 1393 would have been futile].)

5

Here we find clear indication the trial court would not have given defendant the relief he now seeks under S.B. 1393. Indeed, this case is similar to *People v. McVey* (2018) 24 Cal.App.5th 405, where the court held that remand was not warranted. (*Id.* at pp. 418-419) The *McVey* court reasoned, "In light of the trial court's express consideration of the factors in aggravation and mitigation, its pointed comments on the record, and its deliberate choice of the highest possible term for the firearm enhancement, there appears no possibility that, if the case were remanded, the trial court would exercise its discretion to strike the enhancement altogether. We therefore conclude that remand in these circumstances would serve no purpose but to squander scarce judicial resources." (*Id.* at p. 419.) We conclude the same here.

The trial court here imposed the *upper term* on the principal offense involving the pointblank shooting of N.S. (count 2), plus the *upper term* for the section 12022.5 firearm use enhancement. During the hearing, the trial court noted "the biggest thing" in determining the appropriate sentence was to isolate defendant so as to prevent him from committing new crimes. Defendant was "a danger to society," having shot his victim "pointblank" while a child was present in the apartment. Defendant's crime was one of "extreme violence," and he had "baited and brought over" his "vulnerable victim." Defendant also had a history of domestic violence and had violated a restraining order and probation, indicating his tendency to disregard court orders. Defendant also had many guns at his house, planned the crimes here, stopped M.G. from warning N.S. before he arrived, ran from the scene, and tried to dissuade M.G. and N.S. from testifying. The trial court also exercised its discretion to run the sentences on the other offenses consecutive, including the crimes and enhancements against M.G., resulting in the maximum term the trial court could have imposed.

The trial court noted it had considered the mitigating circumstances presented by defense counsel in counsel's effort to convince the court to impose a midterm sentence, including information regarding defendant's mental health issues. However, these were

6

"easily outweighed by the aggravating circumstances." The record clearly indicates the trial court was disinclined to afford defendant any leniency, and there are no mitigating facts in the record that would justify striking or dismissing the firearm enhancements under section 1385 in the interest of justice. We agree with the People that remanding the matter for the trial court to consider whether to exercise its discretion to dismiss or strike the section 12022.5 enhancements would be futile.

## DISPOSITION

The judgment is affirmed.

/s/ 
MURRAY, J.

We concur:

/s/ 
HULL, Acting P. J.

/s/ 
DUARTE, J.