Filed 8/30/21  P. v. Lepe CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>JOSE LEPE,<br><br>    Defendant and Appellant. | A161222<br><br>(Alameda County<br>Super. Ct. No. C173580) |

Jose Lepe was charged with multiple offenses arising out of the 2013 shooting death of Michael Stenger.  In 2016, a jury convicted Lepe of willful and malicious discharge of a firearm from a motor vehicle.  (Pen. Code, § 26100, subd. (c); statutory references are to this code.)  In returning this verdict, the jury found that Lepe personally and intentionally discharged a firearm causing death, which subjected him to an enhanced sentence under section 12022.53, subdivision (d) (section 12022.53(d)).  Lepe was also convicted of unlawful possession of a firearm. (§ 29805).  The trial court sentenced him to an aggregate term of 30 years to life in prison.

This is Lepe's second appeal from the judgment.  (See *People v. Lepe* (Mar. 13, 2019, A151672) [nonpub. opn.] (*Lepe I*).)  In *Lepe I*, this court affirmed Lepe's convictions but remanded his case so the trial court could exercise its discretion to consider striking the section 12022.53(d)

1

enhancement.  In the present appeal, Lepe challenges the trial court's decision not to strike the enhancement.  Finding no abuse of discretion, we affirm the judgment.

## BACKGROUND

*Lepe I* contains a detailed account of the underlying facts and early procedural history of this case, which we summarize here before turning to the present appeal.[1]

### I.  The December 2013 Shooting and Investigation

Michael Stenger was a family friend of Lepe's ex-girlfriend, Ariana M. In December 2013, Stenger was living with Ariana and her family in an apartment in Oakland.  Lepe and Ariana had a child together, but he had been convicted of domestic violence and Ariana had a restraining order against him.  Lepe also had problems with Stenger.  Lepe had been the victim of a shooting in 2012 and he was convinced that Stenger was the person who shot him.  Meanwhile, Stenger told people close to him that he was afraid Lepe was going to kill him.

On the evening of December 1, 2013, Lepe borrowed his cousin's car and parked in front of Ariana's apartment.  While Ariana and the couple's young child were in the car with Lepe, Stenger arrived in a friend's car and was dropped off across the street.  As Stenger crossed the street toward his apartment, he was shot and killed.  The shooting was partially captured on surveillance video from cameras on a nearby building.  Police traced the car Lepe had been driving to Lepe's cousin, who reported that Lepe had returned it with a shattered driver's side window.  The cousin also reported that Lepe

---

[1]  A copy of our decision in *Lepe I* is included in the appellate record.  We also granted Lepe's request for judicial notice of the record in his prior appeal.

asked him to get rid of the car and that Lepe admitted that when he saw Stenger he had to "get on him."

When police interviewed Lepe, he told them several lies, claiming he did not know anything about Stenger's shooting, he did not leave his home on the night Stenger was killed, and he did not carry or own a gun. Lepe also reported that Stenger had problems with a lot of people and tried to implicate a person he referred to as "G." Eventually, Lepe admitted that he shot Stenger, but he claimed that Stenger was coming right at him and had his hand in his pocket reaching for a weapon. Stenger was not armed when police arrived at the crime scene, but Lepe claimed to have heard on the street that someone took a gun off Stenger's body before the police arrived.

## II. Lepe's Convictions and Sentence

In 2016, Lepe was tried on three counts: (1) murder (§ 187); (2) possession of a firearm by a person with a domestic violence conviction in the past 10 years (§ 29805); and (3) willful discharge of a firearm from a motor vehicle at a person who was not an occupant of the vehicle (§ 26100). At trial, Lepe claimed that he acted in self-defense. He testified that he was afraid for his life when he saw Stenger approaching him from across the street in December 2013 because Stenger had shot him the previous year, and when Stenger moved a hand toward his pocket, Lepe thought Stenger was reaching for a gun and was going to kill him.

The jury found Lepe guilty of the count two charge of unlawful possession of a firearm, and the count three charge of willfully discharging a firearm from a vehicle. In its verdict on the count three charge, the jury also found that in the commission of the offense, Lepe "personally and intentionally discharged a firearm and caused death to Michael Stenger" within the meaning of section 12022.53(d). After recording these verdicts,

3

the court ordered the jury to continue deliberating as to the count one murder charge. A few hours later, the jury returned a verdict finding Lepe not guilty of first degree murder, but it was unable to reach a unanimous verdict as to the lesser offenses of second degree murder and manslaughter.

Lepe was sentenced in May 2017. The probation department and the district attorney recommended the maximum sentence of 32 years and eight months to life in prison. Lepe requested a "non-life sentence," arguing that imposition of a 25-year-to-life term would constitute cruel and unusual punishment. At the sentencing hearing, the court considered the probation report, sentencing memoranda, a letter from Stenger's fiancé, who was also the mother of his two-year-old child, and several letters from Lepe's family and friends. Arguments from counsel focused almost exclusively on the question whether it would be cruel and unusual punishment to impose the 25-year-to-life sentence enhancement.

The trial court found that imposing the section 12022.53(d) enhancement on Lepe did not constitute cruel and unusual punishment because the resulting sentence would not be so disproportionate to the offense for which it was being imposed as to shock the conscience or offend fundamental notions of human dignity. (See *People v. Dillon* (1983) 34 Cal.3d 441, 478.) In explaining this ruling, the court spent significant time reviewing the evidence and supporting its conclusion.

Then the court sentenced Lepe to an aggregate 30-year prison term, calculated as follows: for count three, a mid-term sentence of five years for the section 26100 felony, and a consecutive indeterminate term of 25 years to life for the section 12022.53(d) enhancement; for count two, a concurrent eight month term for violating section 29805, representing one-third the midterm, which was stayed pursuant to section 654. Regarding the section

4

12022.53(d) enhancement, specifically, the court made this additional comment: "The indeterminate term. The enhancement charged in conjunction with count three, personal intentional discharge of a firearm causing death was found [true] by the jury. The enhancement carries a mandatory and consecutive 25 years to life, [] which the court is imposing and deems appropriate based on the evidence presented in this case."

## III. Lepe's Prior Appeal

Lepe appealed, seeking reversal of the judgment due to the admission of two categories of evidence: (1) hearsay statements Stenger made prior to his death expressing fear that Lepe was going to kill him; and (2) body camera video recorded by the officer who found Stenger lying in the street after the shooting. In *Lepe I*, this court found that the trial court did not abuse its discretion by admitting the challenged evidence. (See *People v. Thompson* (2010) 49 Cal.4th 79, 128 [rulings regarding admission of evidence are reviewed for abuse of discretion].)

Lepe also appealed his sentence, contending that it constituted cruel and unusual punishment and that he was entitled to a remand so the trial court could exercise its discretion to decide whether or not to impose the 25-year-to-life term under section 12022.53(d). When Lepe was sentenced, the trial court had no discretion to strike the enhancement mandated by the jury's finding that Lepe violated section 12022.53(d). (See *People v. McDaniels* (2018) 22 Cal.App.5th 420, 424.) However, while *Lepe I* was pending, a statutory amendment added section 12022.53, subdivision (h) (section 12022.53(h)), which provides that "[t]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

5

In *Lepe I*, we affirmed the ruling that Lepe's sentence was not unconstitutional under the facts presented. (See *People v. Martinez* (1999) 76 Cal.App.4th 489, 496 ["Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment"].) However, we also found that Lepe was entitled to the benefit of section 12022.53(h), which applied retroactively because his case was not yet final. (*People v. Woods* (2018) 19 Cal.App.5th 1080, 1091.) In reaching this conclusion, we rejected the People's contention that the record showed that the trial court would not have stricken this sentence enhancement under any circumstance. As we explained, "the court and parties were all keenly aware that the court did not have discretion to strike the section 12022.53(d) enhancement, which is why so much time was spent addressing appellant's claim that his sentence constituted cruel and usual punishment. However, the court did not expressly or implicitly address what it would have done if it did have discretion to strike the enhancement." Moreover, in deciding other aspects of Lepe's sentence in which the court did have discretion, it elected not to follow the recommendation to impose a maximum sentence.

## III. The Present Appeal

On October 6, 2020, the trial court held a hearing to exercise its discretion under section 12022.53(d) in accordance with the *Lepe I* remand order. At the hearing, Lepe argued the 25-year-to-life term should not be imposed because there were strong mitigating factors, including that his convictions were for far less serious crimes than homicide, and when he committed them, he was suffering from PTSD. Defense counsel argued that the court's discretion to strike the enhancement was intended to address a case like this, where Lepe did not plan the shooting but reacted to a perceived

threat because of his history as a victim of violent crime, including the incident when he was shot by Stenger. The prosecutor urged the court to re-impose Lepe's original sentence, arguing that Lepe took the life of an innocent man, and his actions were so dangerous they warranted enhanced punishment even without a homicide conviction.

The court prefaced its ruling by highlighting several pertinent facts about Lepe's crime: Stenger, who was 20 years old, had gone with a friend to pick up some food; he was crossing the street toward his home, when Lepe shot him in the head; Lepe fired two bullets through the windshield of a locked car where he was sitting with his one-year-old daughter and the child's mother; there was no compelling evidence that Stenger even saw Lepe; after the shooting, Lepe immediately fled the scene, got rid of his gun and tried to get rid of the car.

In addition to these facts, the court took into consideration all evidence presented at trial and sentencing. It incorporated by reference factors in aggravation and mitigation outlined during the original sentencing hearing. It also observed that even when the section 12022.53(d) enhancement was mandatory, the court had "deemed" the enhanced term to be appropriate based on the evidence. With "full understanding" of its discretion to strike or dismiss the enhancement in the interest of justice, the court found again that the term was appropriate based on the evidence presented in this case. Disagreeing with the prosecutor, the court also opined that its discretion under section 12022.53 includes authority to impose lesser gun enhancements. Being "fully aware" of that discretion, the court elected not to impose lesser terms in this case. The court also rejected Lepe's argument that the section 12022.53(d) enhancement should be reserved for gang conduct.

Finally, the court stated that a remand order had been necessary because during the original sentencing hearing the court had exercised its discretion not to impose a maximum sentence as had been requested by the prosecutor and probation department. Confirming again that it was "fully aware of the scope of [its] discretionary powers," the court sentenced Lepe to a term 25 years to life for the section 12022.53(d) enhancement, and stated: "I deem the sentence fully appropriate for his acts and the harm resulting from the crime that he committed." After advising Lepe of his appellate rights, the court ordered that Lepe be remanded to serve his sentence, which totaled "30 years to life in state prison."

## DISCUSSION

Lepe contends that the trial court violated section 12022.53(h) by refusing to strike or dismiss the section 12022.53(d) sentence enhancement "in the interest of justice pursuant to Section 1385." (See § 12022.53(h).)

The trial court's discretionary decision whether to strike a sentencing allegation is reviewable for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) Two fundamental principles guide our review. First, as the party attacking the sentence, Lepe has the burden to " ' "clearly show that the sentencing decision was irrational or arbitrary." ' " (*Id.* at p. 376.) Absent that showing, we presume that the trial court "acted to achieve legitimate sentencing objectives." (*Id.* at pp. 376–377.) Second, Lepe does not meet his burden merely by showing that reasonable people might disagree with the trial court's decision and, therefore, this court may not substitute its own judgment for the judgment of the trial court. "Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

8

Guided by these precepts, we affirm the trial court's decision to impose the 25-year-to-life enhancement under the circumstances presented here. The record shows that the trial court based its decision on a consideration of the relevant facts and circumstances, which support its rational decision that the interest of justice does not warrant striking the enhancement. Arguing otherwise, Lepe contends the trial court abused its discretion for two reasons.

First, Lepe argues that the trial court ignored the fact that the jury did not convict him of any offense that would have required a finding that he acted with malice. Lepe reasons that, because section 26100 is a general intent crime, the jury's verdict should have signaled to the trial court that Lepe is not the type of defendant who deserves the additional punishment authorized by section 12022.53(d). This flawed reasoning ignores the express language of the statute, which on its face applies to a defendant who personally and intentionally discharges a firearm and proximately causes great bodily injury or death while violating section 26100, subdivision (c). (§ 12022.53(d).) Furthermore, although the jury acquitted Lepe of first degree murder, he was subject to retrial for second degree murder and manslaughter. As noted in *Lepe I*, the prosecutor did not dismiss those pending charges until after the first sentencing hearing when the court imposed the 25-year-to-life term pursuant to the jury's finding that section 12022.53(d) applied.

Second, Lepe contends that the trial court failed to consider undisputed evidence that he did not plan to shoot Stenger or have time to reflect before acting out fear of an imminent threat, whether or not that fear was reasonable. We acknowledge the traumatic effect of Lepe's previous experiences as a shooting victim himself, but at the remand hearing the court expressly stated that it considered all of the evidence presented at trial and

9

sentencing. And, contrary to Lepe's argument here, evidence of what Lepe intended was disputed. The prosecution evidence, which is summarized in *Lepe I*, supports the trial court's rejection of Lepe's claim that he killed Stenger because he thought Stenger was about to shoot him. We cannot say that this decision was an abuse of the trial court's discretion.

For the same reasons, we reject Lepe's contention that the trial court based its sentencing decision on a crime that might have occurred rather than the crime that he actually committed. (Compare *People v. Avila* (2020) 57 Cal.App.5th 1134, 1142.) The jury verdicts establish that Lepe intentionally and maliciously fired his gun from a car at Stenger, who was walking across the street, and that in committing this intentional act, Lepe killed Stenger. The trial evidence shows that when Lepe committed this crime, he was in a locked vehicle with a one-year-old child and her mother, and Stenger was unarmed and walking toward his home, unaware that Lepe was there. There is nothing arbitrary or irrational about the trial court's determination that Lepe's conduct warrants the punishment provided for in section 12022.53(d). Thus, Lepe fails to establish that the trial court erred by exercising its discretion not to strike this enhancement.

## DISPOSITION

The judgment is affirmed.

TUCHER, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*People v. Lepe* (A161222)

10