Filed 3/21/25  P. v. Alatriste CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ARMANDO ALATRISTE,<br><br>    Defendant and Appellant. | B338283<br><br>(Los Angeles County<br>Super. Ct. No. BA344055) |

APPEAL from an order of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Reversed and remanded with directions.

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Steven E. Mercer, Deputy Attorney General, for Plaintiff and Respondent.

————————————

At 18 years of age, Jose Alatriste was convicted of offenses including second degree murder and sentenced to 77 years to life in prison.  In 2023, he unsuccessfully moved for resentencing under Penal Code section 1170, subdivision (d) (§ 1170(d)).[1] On appeal, he argues (and the People agree) the trial court erred by not treating his sentence as equivalent to a sentence of life without parole (LWOP).  We reverse the order denying relief and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

A jury found Alatriste guilty of second degree murder of Primo Garcia (§ 187, subd. (a)), of attempted murder of Wenceslao Valenton (§§ 664, 187, subd. (a)), and of assault with a semi-automatic firearm on both Garcia and Valenton (§ 245, subd. (b)).  The jury found true, in connection with the murder and attempted murder counts, that Alatriste personally used and intentionally discharged a handgun proximately causing great bodily injury and death (former § 12022.53, subds. (b)-(d)), and in connection with the assault counts that Alatriste personally used a handgun and inflicted great bodily injury (former §§ 12022.5 & 12022.7, subd. (b)).  The jury also found true that all these offenses were committed for the benefit of a criminal street gang with the specific intent to promote criminal conduct by gang members (former § 186.22, subd. (b)(1)(C)).

The trial court sentenced Alatriste to 15 years to life for murder, plus a 25 year firearm enhancement, to a consecutive sentence of seven years for attempted murder, plus a 20-year firearm use enhancement, and an additional 10 years for the criminal gang enhancement, for a total sentence of 77 years to life.  The Court of Appeal affirmed Alatriste's conviction and

---

[1]     Undesignated statutory references are to the Penal Code.

sentence.  (*People v. Alatriste* (Dec. 6, 2011, B233020) [nonpub. opn.].)

On May 9, 2023, Alatriste filed a pro se petition for resentencing under section 1172.6.  The form petition alleged that Alatriste was convicted of murder under a theory of imputed malice, or of attempted murder under the natural and probable consequences theory, and that he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."  Alatriste requested the court appoint counsel to represent him in connection with his petition.  On May 11, 2023, the trial court entered an order reciting that Alatriste had been tried on the theory that he shot Garcia, that the jury was not instructed on imputed malice, and that the jury's true finding on firearm use showed Alatriste was the actual killer.  Nonetheless, the trial court appointed counsel to represent Alatriste and ordered the parties to brief the merits of his petition.

On December 14, 2023, with the assistance of counsel appointed to represent him on his 1172.6 petition, Alatriste filed a petition for recall of his sentence under section 1170(d)(1).[2] In support of his petition Alatriste alleged he was 16 years old when he murdered Garcia and that he had been imprisoned for 15 years.  He further argued that he was entitled to be resentenced because his education and discipline record while incarcerated "indicate[d] rehabilitation *or the potential for* rehabilitation", and he had "learned and grown" and was "deeply ashamed of the harm that [he has] caused other people."  In an accompanying memorandum, Alatriste's counsel argued that

---

[2]    Shortly after filing this petition, Alatriste withdrew his petition for resentencing under section 1172.6.

3

"[t]he imposed sentence of 77 years to life is a *de facto* LWOP sentence," and cited *People v. Heard* (2022) 83 Cal.App.5th 608, 631 (*Heard*), arguing that section 1170(d)(1) had been extended "to all those individuals sentenced to the functional equivalent" of LWOP.

The People's memorandum opposing Alatriste's petition conceded that "Alatriste's sentence satisfies the requirements laid out in *Heard*," but opposed granting relief. First, the prosecutor argued that Alatriste's sentence was not the equivalent of LWOP because, under section 3051, "he is eligible for parole in 7 years." Thus, he argued, "the motion should be denied because *Heard* is predicated upon the nonexistent legal fiction that there is such a thing as the 'functional equivalent' of LWOP for juveniles." In addition, the prosecutor argued that Alatriste failed to demonstrate "any real remorse for the incalculable damage he inflicted upon the victims and their families," and that as a practical matter resentencing under section 1170(d)(1) would result in Alatriste's immediate release from custody "having not been rehabilitated." In a supplemental memorandum, the prosecution characterized *Heard* as "erroneous and absurd, in its rationality and in its effect."

Following oral argument, the trial court denied the petition, finding that "Mr. Alatriste received a life sentence *with* the possibility of parole, and therefore falls outside the ambit of [§ 1170(d)(1)]." The court rejected Alatriste's contention that his sentence was the functional equivalent of a sentence of life without parole and concluded that section 3051 provided adequate relief because it "effectively extended to every affected juvenile offender a meaningful opportunity for parole no matter his actual sentence, and, in doing so, eliminated constitutional

4

concerns that juveniles in California could receive a de facto LWOP sentence masquerading as a lengthy life sentence that only speciously offered a chance at parole."

Alatriste filed a timely notice of appeal from the order denying his petition, and argues that the trial court erred by finding he was not sentenced to the equivalent of life imprisonment without parole, and was therefore ineligible for resentencing under section 1170(d). The People now "agree[] that [Alatriste's] sentence of 77 years to life is the functional equivalent of an LWOP sentence, and thus the superior court erred by denying relief and declining to follow [*Heard*]." This concession is not binding on us and does not limit the scope of our review of the order denying Alatriste's petition. (*Money v. Krall* (1982) 128 Cal.App.3d 378, 393 [" 'The mere fact that respondent is now willing to have the order reversed would not justify this court in rendering a judgment of reversal. A judgment or order will not be reversed unless the record shows some legal ground for reversal' "].)

After reviewing the record, we agree with the parties that the trial court erred when it denied Alatriste's petition on the ground that he was not sentenced to LWOP, and that the order should be reversed and the matter remanded for further proceedings. Our review of the trial court's order is limited to whether Alatriste's sentence makes him eligible to petition for resentencing under section 1170(d). We need not, and do not, address whether Alatriste proved by a preponderance of the evidence any of the grounds for relief listed in subdivision (d)(2).

## DISCUSSION
### A. The Legal Standard and Standard of Review

Section 1170(d)(1)(A) provides in pertinent part that "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." Subdivision (d)(2) sets out four possible grounds for relief,[3] one of which the court must find to be "true" by a preponderance of the evidence in order to grant the petition. (§ 1170(d)(5).)

The trial court denied Alatriste's petition on the ground that he was not sentenced to LWOP and thus was statutorily ineligible for resentencing under section 1170(d). It did not reach the question whether Alatriste proved any of the four factors under subdivision (d)(2) by a preponderance of the evidence. "Whether [Alatriste's] sentence is the functional equivalent of LWOP presents a question of law on undisputed facts, which we independently review." (*People v. Superior Court (Valdez)* (2025) 108 Cal.App.5th 791, 800.)

---

[3] These are (1) the defendant "was convicted pursuant to felony murder or aiding and abetting murder provisions of law"; (2) the defendant does not have juvenile felony adjudications for assault or other violent felonies prior to the offense that resulted in the sentence being considered for recall; (3) the defendant committed the offense with at least one adult codefendant; or (4) the defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation. (§ 1170(d)(2)(A)–(D).)

### B. Denying Alatriste's Petition Was Error

### 1. Section 1170(d) applies to offenders sentenced to the functional equivalent of LWOP.

Although Alatriste was 16 years old when he murdered Primo Garcia, and he has been in prison since 2007 or 2008,[4] the trial court is correct that on its face, subdivision (d) of section 1170 limits relief to juvenile defendants who were either originally sentenced to LWOP or resentenced to LWOP upon petitioning for resentencing under section 1170(d)(1). (§ 1170(d)(1)(A) & (10).)  However, in *Heard, supra,* 83 Cal.App.5th 608, the Court of Appeal held that the Equal Protection Clauses of both the United States and California Constitutions require that the right to petition for relief under section 1170(d)(1) be extended to juveniles originally sentenced to the functional equivalent of LWOP.[5]  (*Heard,* at pp. 627-628.) The defendant in *Heard* had been sentenced to a term of 23 years plus 80 years to life.  Like Alatriste, his petition for resentencing under section 1170(d)(1) was denied on the ground the statute was limited to juveniles who were sentenced to explicit LWOP terms.  Reversing, the Court of Appeal held that it could "conceive of no legitimate reason for making juvenile offenders sentenced to explicit life without parole terms eligible to seek

---

[4]      Alatriste was sentenced on March 10, 2010, at which time he had already been in custody for 972 days, indicating he was arrested on July 12, 2007, three days after Primo Garcia was murdered.

[5]      A sentence is the "functional equivalent of LWOP" if the release date "is near or beyond the juvenile's life expectancy." (*People v. Carter* (2018) 26 Cal.App.5th 985, 995.)

7

resentencing but not juvenile offenders sentenced to the equivalent of a life without parole sentence." (*Heard,* at p. 631.)

Cases decided after the trial court denied Alatriste's petition add weight to our conclusion that the court erred when it declined to follow *Heard.* In *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*), decided four months after the order denying Alatriste's petition, the trial court had denied an 1170(d) petition "on the ground that [defendant] had not been sentenced to an explicit LWOP term." (*Sorto,* at p. 440.) Rejecting the Attorney General's arguments that "*Heard* was wrongly decided and is contrary to California Supreme Court precedent" – the same arguments the trial court adopted here – our colleagues in Division Three reversed the order denying relief, holding that "offenders sentenced to functionally equivalent LWOP terms . . . are entitled to section 1170(d) relief under the constitutional guarantee of equal protection" and that "parole eligibility under section 3051 does not render those offenders ineligible for relief under section 1170(d)." (*Sorto*, at p. 440.) Still more recently, the court in *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1054-1063 (*Bagsby*) declined an invitation by the Attorney General to reconsider *Heard*, concluding instead that the holding was both correct and consistent with existing case law.

## 2. Alatriste's sentence was the functional equivalent of LWOP.

The trial court's second reason for denying Alatriste's petition was that his sentence of 77 years to life was not the " 'functional equivalent' of an LWOP sentence." The court specifically noted that "[f]rom a purely quantitative perspective, defendant's sentence, although substantial, is not even remotely

as lengthy, and is therefore not comparable," to the sentence under scrutiny in *Heard*. Again, the trial court's conclusion was inconsistent with case law in effect at the time of the hearing. For example, our Supreme Court has held "that a sentence of 50 years to life is functionally equivalent to LWOP." (*People v. Contreras* (2018) 4 Cal.5th 349, 369; see also *People v. Garcia* (2018) 30 Cal.App.5th 316, 326 [juvenile sentence of 50 years to life is the equivalent of LWOP].)[6] In light of these authorities, the trial court's conclusion that a sentence of 77 years to life is not the functional equivalent of LWOP is unsustainable.

### 3. The availability of a parole hearing under section 3051 does not bar Alatriste from seeking relief under section 1170(d).

The final reason cited by the trial court for denying Alatriste's petition was that section 3051[7] "adequately address[es]" Alatriste's concerns by affording him an opportunity to be considered for parole after serving 25 years of his sentence. The trial court elected instead to follow other appellate decisions it characterized as "reject[ing] claims such as Mr. Alatriste's as

---

[6] In fact, at the time of the hearing on Alatriste's petition, the policy of the Los Angeles District Attorney's office was that, in the context of a petition for resentencing under section 1170(d)(1)(a) "[a] de facto life without parole sentence is any sentence imposed that was 50 years-to-life or more."

[7] Section 3051 requires the Board of Parole Hearings to conduct a "youth offender parole hearing" during the 15th, 20th, or 25th year of a juvenile offender's incarceration. (§ 3051, subd. (b).) The date of the hearing depends on the offender's " '[c]ontrolling offense,' " which is defined as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (*Id.*, subd. (a)(2)(B).)

having been mooted by Penal Code § 3051." We have reviewed each of the cases cited by the trial court[8] and conclude that none of them is authority for denying Alatriste's petition on the ground his sentence rendered him ineligible to petition for relief under section 1170(d). In particular, none of these cases involved a petition for relief under section 1170(d), and none held that an offender entitled to a parole hearing under section 3051 was ineligible to file a petition for resentencing under section1170(d).

The trial court's conclusion that section 3051 barred Alatriste from pursuing a petition for resentencing under section 1170(d) is at odds with case law interpreting these statutes. Section 3051 "change[s] the manner in which the juvenile offender's original sentence operates by capping the number of years that he may be imprisoned before becoming eligible for release on parole . . . with no additional resentencing procedure required." (*People v. Franklin* (2016) 63 Cal.4th 261, 278-279.) By contrast, at resentencing under section 1170(d), "a trial court has broad discretion to select the term of imprisonment, run sentences concurrently or consecutively, and strike or dismiss enhancements. [Citations.]" (*Sorto, supra,* 104 Cal.App.5th at p. 449.) Thus, "section 1170(d) plainly has potential to grant meaningful relief to functionally equivalent LWOP offenders . . . even after the Legislature enacted section 3051. . . [T]he simple fact that offenders . . . have filed petitions under section 1170(d) – after already [receiving] relief under section 3051 – would seem to refute" any contention to the contrary. (*Sorto,* at p. 449.)

---

[8] *In re Cook* (2019) 7 Cal.5th 439; *People v. White* (2022) 86 Cal.App.5th 1229; *In re Williams* (2020) 57 Cal.App.5th 427; and *People v. Woods* (2018) 19 Cal.App.5th 1080.

A similar argument was also considered and rejected in *Bagsby*. There, the Attorney General argued, *inter alia*, that section 3051 rendered section 1170(d) superfluous, such that "striking the resentencing provision would be 'fitting' . . . because 'there exists another law, [section 3051, subdivision (b)(4)], which has been found to conform to current case law, and largely fulfills the legislative purpose of [section 1170(d)(1)(A)].' " (*Bagsby, supra*, 106 Cal.App.5th at p. 1062.) Rejecting this argument, *Bagsby* noted that "[t]he Legislature has amended section 1170 several times since 2017 [Citations.] And yet it has never repealed the section 1170(d) resentencing provision, despite its presumed awareness of . . . subdivision (b)(4) of section 3051. [Citation.] Had the Legislature truly preferred for . . . the amendment of section 3051 [] to result in the elimination of subdivision (d)(1)(A) from section 1170, it could have done so itself on one of these occasions. But it did not." (*Bagsby*, at p. 1062.)

## DISPOSITION

We reverse the order denying Alatriste's petition for relief under section 1170(d). On remand, the court shall reconsider Alatriste's petition in accordance with this opinion. Nothing in this opinion should be construed as expressing a view as to the merits of Alatriste's petition, nor the relief the court should grant if it determines Alatriste is eligible for resentencing.

RICHARDSON, J.

We concur:

ASHMANN-GERST, Acting P. J.          CHAVEZ, J.

11