Filed 3/18/21  P. v. Joe CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | B298439 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA240172) |
| v. | |
| WARDELL JOE, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed as modified.

Tracy J. Dressner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Blythe J. Leszkay and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This is the fourth time Wardell Joe has been before this court. The last time Joe was before us, we remanded the matter for the trial court to consider whether to strike a firearm enhancement under then newly-enacted Senate Bill No. 620 and to hold a hearing under *People v. Franklin* (2016) 63 Cal.4th 261. On remand, the trial court declined to strike the firearm enhancement. Joe therefore appeals again. He contends that the trial court abused its discretion by refusing to hold the *Franklin* hearing before or with the motion to strike the firearm enhancement and by denying the motion. He also contends the trial court erred by not considering his ability to pay the restitution fine and by imposing an unauthorized fee. We correct a sentencing error but otherwise affirm the orders.

## BACKGROUND

I.      The earlier proceedings

Joe's history in this court began with his 2004 conviction of first degree murder with a true finding on a special circumstance (Pen. Code,[1] §§ 187, subd. (a), 190.2, subd. (a)(17); count 1), and two counts of robbery (§ 211; counts 2 & 3). The jury also found true principal gun-use allegations (§ 12022.53, subds. (c), (d), (e)(1); counts 1, 2 & 3) and gang allegations (§ 186.22, subd. (b)(1); counts 1 & 3). Joe's conviction arose out of the armed robbery of a market by Joe and seven accomplices, during which an accomplice shot and killed a security guard. Six of those involved were gang members, including Joe. Joe was at a meeting to plan the robbery and he was a getaway driver. He

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

was not present when the security guard was shot. The trial court sentenced Joe to life without the possibility of parole plus 25 years to life in prison. On appeal, we corrected a sentencing error but otherwise affirmed the judgment of conviction. (*People v. Bridges* (Jan. 30, 2006, B176263) [nonpub. opn.].)

The California Supreme Court subsequently decided *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. Those cases clarified who can be a "major participant" who acts with reckless indifference to life as provided in the special circumstance statute, section 190.2, subdivision (d). Joe petitioned for relief under *Banks* and *Clark*, and we found there was insufficient evidence to support the special circumstance finding. (*In re Joe* (Sept. 15, 2016, B275593) [nonpub. opn.].) Our decision concluded that although Joe was at a meeting to plan the robbery, waited nearby while his accomplices robbed the market, and drove a getaway car, there was no other evidence about his involvement in the crimes to establish he was a major participant or had the requisite mens rea. Further, there was evidence from which it could be inferred that shooting the security guard was not part of the plan. We therefore granted Joe's petition and remanded the matter for resentencing.

On remand, the trial court resentenced Joe to a determinate term of five years and an indeterminate term of 50 years to life, which included a term of 25 years to life for a firearm enhancement under section 12022.53, subdivisions (d) and (e)(1)). The trial court imposed and stayed sentences on remaining enhancements.

Joe appealed again, this time contending he was entitled to resentencing under Senate Bill No. 620 and to a hearing under

*People v. Franklin*, *supra*, 63 Cal.4th 261, which held a youth offender is entitled to create a record of factors that may be relevant to an eventual youth offender parole hearing under section 3051. We agreed with those contentions, corrected sentencing errors, and accordingly remanded the matter. (*People v. Joe* (Apr. 19, 2018, B282478) [nonpub. opn.].)

II.     Proceedings giving rise to this appeal

At a November 2018 hearing following remand, Joe's counsel represented that he was still gathering materials for the *Franklin* hearing. At that point, counsel had a thousand pages of probation documents and an expert was developing a psycho-social review of Joe. In counsel's opinion, those materials would be relevant to whether the firearm enhancement should be stricken. The court granted counsel's request for a continuance.

At the continued hearing in January 2019, Joe asked for a further 60-day continuance, as counsel was still gathering documents, had requested prison mental health and education records, and was awaiting expert reports. Counsel again asserted his belief that *Franklin* materials were relevant to the motion to strike the firearm enhancement. The trial court continued the matter.

By the time of the continued hearing on April 4, 2019, Joe had filed a motion to continue the hearing again. The trial court noted that it now had pending the *Franklin* hearing, the motion to strike the firearm enhancement, and a section 1170.95 petition

4

that Joe had recently filed.[2]  With respect to the section 1170.95 petition, the trial court acknowledged the significant likelihood the murder conviction would "go away" since this court had reversed the special circumstance finding.  In that event, and if the court granted the motion to strike the firearm enhancement, the *Franklin* hearing would be moot.  The trial court therefore granted a short continuance to hear the firearm enhancement issue but stayed the *Franklin* hearing.  Over defense counsel's objection that information gathered for the *Franklin* hearing was relevant to the firearm enhancement issue, the trial court reiterated that it would schedule the *Franklin* hearing only if it did not strike the enhancement.

Several weeks later, on April 26, 2019, the trial court heard the motion to strike the section 12022.53 firearm enhancement.[3]  In addition to argument from Joe's counsel and the prosecutor, several victims also provided statements to the court.  Joe's counsel argued the trial court should consider that Joe was only 20 years old when he committed the crimes, as well as the

---

[2] Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder.  Senate Bill No. 1437 added section 1170.95, which prescribes the petitioning process by which defendants convicted of murder under a now invalid theory can seek resentencing.

[3] On January 1, 2019, Senate Bill No. 1393 became effective, amending sections 667 and 1385 to allow a court to exercise its discretion to strike or dismiss prior serious felony enhancements.  (Stats. 2018, ch. 1013, §§ 1–2.)  The trial court therefore indicated it would also consider whether to strike the five-year prior (§ 667, subd. (a)).

attributes of youth, such as incomplete brain development and lack of maturity. The trial court noted the factors it had to consider were the same as those pertinent to a *Romero*[4] motion. Considering those factors, the trial court found the planning of the crime was "extreme" and the level of sophistication "very, very high." Each participant in the crime had a role, and each was "a soldier and member in [the] gang." Also, when Joe committed the current offense, he was on probation for assault with a semiautomatic firearm. The trial court therefore found no good cause to strike the enhancement. Following its ruling, the trial court scheduled a hearing to address both *Franklin* issues and the section 1170.95 petition.

At that hearing, the trial court granted the section 1170.95 petition, dismissed the murder count, and resentenced Joe to a determinate term of six years plus 25 years to life (§ 12022.53, subds. (d), (e)(1)). Over Joe's objection that he had no ability to pay fines and that a maximum fine would be excessive, the trial court imposed a $10,000 restitution fine (§ 1202.4, subd. (b)(1)), a $10,000 parole revocation fine, suspended (§ 1202.45), an $80 court security fee (§ 1465.8), and a $60 court facilities assessment (Gov. Code, § 70373). The trial court further noted that Joe's counsel had filed exhibits and a brief, which were made part of the record, for any eventual youth offender parole hearing.[5]

---

[4] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[5] Joe separately appealed the order denying his motion to strike the firearm enhancement and the resentencing order. We consolidated the appeals.

## DISCUSSION

I. The trial court did not abuse its discretion in denying Joe's request to continue the motion to strike the firearm enhancement, or in denying the motion

Joe contends that the trial court abused its discretion by refusing to hold the *Franklin* hearing either before or at the same time as the motion to strike the firearm enhancement and, further, by refusing to strike the enhancement. We disagree.

Senate Bill No. 620 amended section 12022.53, subdivision (h), to give trial courts discretion to strike firearm enhancements in the interest of justice under section 1385.[6] As section 12022.53, subdivision (h), rests on the same "animating authority underlying *Romero*"—i.e., section 1385—a trial court is required to weigh similar considerations in deciding whether to strike a firearm enhancement. (*People v. Rocha* (2019) 32 Cal.App.5th 352, 359.) Those considerations include the defendant's rights, society's interests, and individualized considerations pertaining to the defendant and his offenses and background. (*Ibid.*; see generally *Romero*, *supra*, 13 Cal.4th at p. 531; *People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review a trial court's decision regarding striking a sentencing allegation for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373–374.) Where a statute expressly vests discretionary power in trial courts, a ruling will not be disturbed except on a showing that the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted

---

[6] Section 12022.5 was similarly amended.

in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

Here, Joe argues that the trial court abused its discretion by refusing to continue the motion to strike the firearm enhancement to a time when he had gathered all materials for the *Franklin* hearing. To support his argument, Joe cites *People v. Woods* (2018) 19 Cal.App.5th 1080. In that case, the court remanded the matter to the trial court to exercise its discretion under section 12022.53, subdivision (h). (*Woods*, at p. 1091, fn. 3.) Although the court found that the defendant was not also entitled to a *Franklin* hearing on remand, the court noted its conclusion did not preclude the trial court from supplementing the record for any eventual youth offender parole hearing. (*Woods*, at p. 1091, fn. 3.) The court observed, "Indeed, it may well be that information offered to the trial court to assist in its determination of whether to exercise its discretion to strike the firearm enhancement will be the same sort of information that would be offered under a *Franklin* remand in any event." (*Ibid.*)

We agree with the *Woods* court's observation that information gathered for a *Franklin* hearing might be the same sort of information a trial court may consider in its decision whether to strike a firearm enhancement. However, *Woods* did not conclude that a trial court *must* hold a *Franklin* hearing before deciding whether to strike an enhancement, and Joe has cited no other authority for that proposition. Indeed, the rule concerning motions to strike a firearm enhancement is clear: a trial court must consider relevant factors such as the defendant's rights, society's interests, and individualized considerations pertaining to the defendant and his or her offenses and

background.  (See, e.g., *People v. Rocha, supra,* 32 Cal.App.5th at p. 359; *People v. Williams, supra,* 17 Cal.4th at p. 161.)

Here, the trial court considered these factors.  As for the nature of the current offense, the trial court found the crime was planned and sophisticated, involving eight people and multiple getaway cars, one of which Joe drove.  Contrary to Joe's assertion, this finding was not at odds with our opinion reversing the special circumstance finding.  In that opinion, we referred to evidence suggesting that shooting the security guard was not part of the plan.  But, as our opinion also summarized, Joe was at a meeting to plan the robbery and was one of eight people involved in the crime.  (*In re Joe, supra,* B275593.)  Even if shooting the security guard was not part of the original plan, that does not undercut the significant coordination and planning that went into the armed robbery.

As for Joe's background, the trial court noted that he committed the current offense while on probation for assault with a firearm.  Joe also had six sustained juvenile petitions.  Moreover, the trial court considered individualized information about Joe.  It expressly stated it had considered probation reports prepared for hearings in 2004 and 2017 and had read the moving and opposing papers, which included an additional probation report prepared for a 1997 hearing and a social worker's report.

Joe, however, asserts the trial court ignored his argument and circumstances in mitigation.  He argued below that the firearm enhancement should be stricken because of his youth and difficult circumstances when he committed the crimes, that he was not as culpable as his accomplices, and he was not a major

participant who acted with reckless indifference to human life.[7]
Counsel also argued that the passage of Senate Bill Nos. 620 and
1437 demonstrated the law was moving away from vicarious
liability for felony murderers, which, he contended, was the sole
hook for the firearm enhancement here since Joe was not the
actual shooter. Yet, Joe cites no authority indicating the trial
court was required to explicitly address *all* of his arguments, or
that the court erred in failing to explain its reasoning in more
detail. Rather, a judgment or order challenged on appeal is
presumed correct, and it is the appellant's burden to
affirmatively demonstrate error. (*People v. Sanghera* (2006) 139
Cal.App.4th 1567, 1573.)

Further, to the extent Joe suggests the trial court could not
have sufficiently considered any mitigating circumstances
because it did not yet have the information gathered for the
*Franklin* hearing, we disagree. By the time the trial court heard
the motion to strike the firearm enhancement, Joe's counsel had
spent months accumulating information, had gathered thousands
of pages of probation reports, and had engaged experts to
evaluate Joe. Joe attached a four-page social worker's report to
his motion to dismiss the firearm enhancement.[8] The report
detailed Joe's background, including that his mother was

---

[7] The prosecutor acknowledged that Joe had a "tough life"
and lacked advantages, but disagreed that those factors
mitigated in favor of striking the enhancement when Joe did not
avail himself of opportunities to change.

[8] Counsel later submitted for the *Franklin* hearing a 17-
page report from the same social worker. This report included
information from interviews with Joe's family members.

addicted to drugs and that his alcoholic father was emotionally abusive and rejected Joe. The report identified inadequate parenting as the most powerful predictor of early antisocial behavior. According to the report, Joe began to exhibit such behavior in elementary school and to self-medicate with marijuana and alcohol. Eventually, he found support and acceptance with neighborhood gang members. Notwithstanding this troubled upbringing, Joe disassociated with gangs, had few serious rules violations while in prison, and did not present behavioral problems during his 20 years in prison. Thus, while the social worker's final 17-page report provided a more detailed picture of Joe's childhood and upbringing, the essential aspects of that report were before the trial court when it ruled on the motion.

As for Joe's culpability compared to his accomplices, and this court's finding that the evidence was insufficient to establish he was a major participant who acted with reckless indifference to human life (*In re Joe*, *supra*, B275593), the trial court was unpersuaded by counsel's arguments. The trial court correctly noted that the standard for determining aider and abettor liability for the purposes of the special circumstance was different from the one governing whether to strike a firearm enhancement and, significantly, the latter includes considering the defendant's criminal history. In any event, as we have said, the trial court was fully aware of the facts surrounding Joe's culpability.

Joe also attributes the trial court's refusal to strike the firearm enhancement to a personal disdain for Senate Bill No. 1437. Joe speculates that the trial court did not strike the firearm enhancement because it sought to compensate for likely needing to vacate the murder conviction under section 1170.95.

Notwithstanding the trial judge's statements or opinions about Senate Bill No. 1437, we see nothing in the record indicating any such opinions clouded the court's impartiality or affected the exercise of discretion as to the motion to strike the enhancement. As described above, the record reflects the trial court reasonably considered the relevant factors in ruling on the motion. Moreover, the trial court acknowledged that if appellate courts upheld Senate Bill No. 1437's constitutionality, the trial court would likely grant Joe's section 1170.95 petition—which is what happened. The trial court granted the petition and dismissed the murder count.

Finally, the trial court did not abuse its discretion by refusing to continue the hearing on the firearm enhancement. A continuance may only be granted for good cause (§ 1050, subd. (e)), and trial courts have broad discretion to determine whether good cause exists (*People v. Alexander* (2010) 49 Cal.4th 846, 934). We review an order denying a motion to continue for an abuse of discretion. (*Id.* at p. 935.) Here, the trial court granted Joe three continuances. The trial court's rationale for refusing to grant a fourth one was sound: if it struck the firearm enhancement and granted the section 1170.95 petition, the *Franklin* hearing would be moot. Trial courts have inherent authority to manage their calendars and to control litigation. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.) The record does not show that the trial court sacrificed any due process right Joe had to a full and fair opportunity to present information relevant to the motion to strike the firearm enhancement on the altar of judicial economy. We therefore find

that the trial court did not abuse its discretion, much less violate Joe's due process rights, by denying the motion.

II.    The trial court did not err in overruling Joe's objection to the restitution fine

After the trial court imposed the $10,000 restitution fine under section 1202.4, subdivision (b)(1), Joe asked the trial court to impose a lesser amount in light of his indigence.  The trial court said Joe could pay the fine from his prison wages and then cited cases criticizing *People v. Dueñas* (2019) 30 Cal.App.5th 1157, which held that imposing a minimum restitution fine without determining the defendant's ability to pay violates due process.  Joe repeated that he lacked the ability to pay the fine and that it was excessive.[9]  The trial court noted and overruled the objection.

As Joe acknowledges, *Dueñas* is not the issue before us. Where, as here, a trial court imposes a restitution fine in an amount greater than the statutory minimum, a defendant has a right to object, per section 1202.4, subdivisions (c) and (d), that he lacks the ability to pay.  In that case, a trial court shall consider any relevant factors, including "the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime.  Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime.  Consideration

---

[9] Joe does not argue on appeal that the fine was excessive.

13

of a defendant's inability to pay may include his or her future earning capacity." (§ 1202.4, subd. (d).)  It also includes considering a defendant's present ability to pay by virtue of prison wages.  (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.)  Qualifying for court-appointed counsel alone does not establish an inability to pay fines and fees but may be a factor.  (*Ibid.*)  Although the court must consider relevant factors, a separate hearing is not required, and the court need not make express findings as to the factors bearing on the amount of the fine.  (§ 1202.4, subd. (d).)  The defendant bears the burden of demonstrating an inability to pay.  (*Ibid.*; *People v. Chhoun* (2021) 11 Cal.5th 1, 55.)

On appeal, Joe argues he has no burden to show his inability to pay fines and fees because the trial court never held a hearing on that issue.  That is inaccurate.  Joe raised the issue, and the trial court considered but rejected it at the sentencing hearing.  The trial court had no obligation to hold a separate hearing.  (§ 1202.4, subd. (d).)  And, other than Joe's bare objection he was indigent, Joe introduced no evidence about his ability to pay or otherwise made an offer of proof.  (See, e.g., *People v. Gamache* (2010) 48 Cal.4th 347, 409 [defendant merely cited impending incarceration].)  Nothing in the record suggests the trial court failed to consider the relevant factors.  In fact, the trial court had recently ruled on Joe's motion to strike the firearm enhancement and so was familiar with facts relevant to Joe's ability to pay.  We therefore find that the trial court did not abuse its discretion.

III.    Sentencing error and corrections to abstract of judgment

The trial court imposed a $30 court facilities assessment under Government Code section 70373 on each count for a total of

14

$60.  However, that statute does not apply to convictions predating January 1, 2009, the date the statute became effective. (*People v. Davis* (2010) 185 Cal.App.4th 998, 1000.)  Joe was convicted of his crimes in 2004, before Government Code section 70373 became effective.  Therefore, the assessment must be stricken.

The trial court sentenced Joe to one year on count 2, which was one-third the midterm.  However, the abstract of judgment incorrectly states he was sentenced to the upper term.  The abstract of judgment also incorrectly states that Joe was awarded only 11 days of custody credits when he was in fact awarded 111 days.  These errors must be corrected.

## DISPOSITION

The $60 assessment imposed under Government Code section 70373 is stricken. The abstract of judgment shall be corrected to reflect that the trial court imposed one-third the midterm on count 2 and awarded 111 days of custody credits. The trial court is directed to modify the abstract of judgment and to forward the modified abstract of judgment to the Department of Corrections and Rehabilitation. The orders are otherwise affirmed.

NOT TO BE PUBLISHED.


ADAMS, J.*


We concur:



EDMON, P. J.



LAVIN, J.


---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16