Filed 1/20/22  P. v. Inzunza CA4/1
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D077957 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS300262) |
| VERONICA INZUNZA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Remanded for sentencing, and in all other respects affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers and Julie L. Garland, Assistant Attorneys General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Veronica Inzunza guilty of two counts of possession of heroin for purposes of sale (Health & Saf. Code, § 11351; counts 1 and 6), two counts of possession of methamphetamine for purposes of sale (Health & Saf. Code, § 11378; counts 2 and 4), one count of failure to appear while on bail (Pen. Code, § 1320.5; count 3), one count of transportation of methamphetamine for sale (Health & Saf. Code, § 11379, subd. (a); count 5), and one count of transportation of heroin for sale (Health & Saf. Code, § 11352, subd. (a); count 7). The jury also made a true finding regarding weight allegations for counts 2, 4 and 6. (Pen. Code, §§ 1203.073, subd. (b)(2), 1203.07, subd. (a)(1).)

The trial court sentenced Inzunza to a term of five years, eight months, with an order that Inzunza be released on mandatory supervision after three years.

Inzunza contends that the prosecutor made several misstatements during closing argument that constituted prosecutorial error. According to Inzunza, because defense counsel did not object to the prosecutorial error, she received ineffective assistance of counsel, and we should reverse her conviction on counts 1, 2, 4 and 6 on that ground. Inzunza also argues that due to a recent statutory amendment giving a trial court the discretion to choose which count should be punished when multiple counts are eligible to be stayed under Penal Code section 654 (rather than the former law which required that the count with the longest term be selected for punishment), we should remand to allow the trial court to exercise its discretion on that issue.[1]

---

[1] We originally issued an opinion in this matter on December 15, 2021. On December 28, 2021, Inzunza filed a petition for rehearing, which for the first time sought resentencing under the recent amendment to Penal Code section 654. We granted the petition for rehearing to address the issue.

We conclude that Inzunza has not established ineffective assistance of counsel, but that remand for resentencing is warranted for the limited purpose of allowing the trial court to exercise its discretion to determine which of the counts subject to Penal Code section 654 should be punished. We accordingly remand for resentencing, and in all other respects we affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of April 6, 2018, a National City police officer contacted Javier Flores, who was standing outside a motel room. The officer developed suspicion that there were drugs in Flores's motel room and indicated he was going to conduct a search. Flores stated that his girlfriend was inside the room taking a shower. When the motel room door was opened, Inzunza was inside the room. Police searched the room and located drugs in two locations. First, inside a backpack that belonged to Inzunza, police located (1) a baggie containing 13.5 grams of methamphetamine; (2) a baggie containing 1.6 grams of heroin; (3) a bindle containing 1.1 grams of methamphetamine; (4) several new unused plastic baggies in two sizes; (5) a pipe for smoking methamphetamine; (6) used syringes; (7) a cell phone; and (8) a knife. Second, inside the refrigerator, behind a piece of clothing, officers found (1) 24.8 grams of methamphetamine; (2) 10.6 grams of heroin; and (3) a digital scale. Items associated with the use or sale of drugs were also found in other locations in the room, including two more cell phones; additional unused baggies; a powerful lighter typically employed by methamphetamine and heroin users; a bottle cap with heroin residue; another digital scale; walkie talkies; and a piece of paper that appeared to contain mathematical calculations associated with drug sales. When Inzunza was searched, officers

3

found a total of $369.00 in various denominations on her person.  No significant amount of money was found on Flores.  When interviewed by police at the scene, Flores admitted that he sold methamphetamine but contended that he sold only $50.00 worth of drugs per day.  Flores and Inzunza were both arrested for possessing drugs for sale.

Ten days later on April 16, 2018, Flores and Inzunza were out of custody when a Coronado police officer responded to a call regarding a suspicious vehicle circling the block at 12:07 a.m.  When the officer located and approached the vehicle, Inzunza was in the driver's seat of the car with the engine running but the lights off.  Flores was in the backseat.  When the vehicle was searched, police located a bag on the front passenger seat, inside of which was a zippered case that held two clear plastic bags containing the following:  (1) 46.53 grams of heroin and (2) 46.03 grams of methamphetamine.  A clear bag containing approximately 100 unused small baggies was on the driver's seat.  In the backseat area, police found a knife and the top of a can, which is typically used to prepare heroin for injection.  When Inzunza exited the vehicle, she was holding a methamphetamine pipe.  Flores and Inzunza were arrested.

In a consolidated amended information, Inzunza was charged with two counts arising from the April 6, 2018 arrest:  possession of heroin for the purpose of sale (Health & Saf. Code, § 11351); and possession of methamphetamine for the purpose of sale (*id.*, § 11378), with the further allegation that the weight of the methamphetamine was at least 28.5 grams (Pen. Code, § 1203.073, subd. (b)(2)).  Inzunza was charged with four counts arising from the April 16, 2018 arrest:  possession of methamphetamine for the purpose of sale (Health & Saf. Code, § 11378), with the further allegation that the weight was at least 28.5 grams (Pen. Code, § 1203.073, subd. (b)(2));

4

transport for sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a)); possession of heroin for the purpose of sale (*id.*, § 11351), with the further allegation that the weight was at least 14.25 grams (Pen. Code, § 1203.07, subd. (a)(1)); and transport for sale of heroin (Health & Saf. Code, § 11352, subd. (a)). Inzunza was also charged with failing to appear while on bail. (Pen. Code, § 1320.5).[2]

During trial, a detective testified as an expert witness on behalf of the People to explain the quantities of drugs that a user typically consumes and possesses, as well as the quantities of drugs that are typically offered for sale. The detective further offered an opinion as to whether Inzunza possessed for sale the drugs that she was found with on April 6 and April 16, 2018. The detective concluded that Inzunza possessed the drugs for the purpose of selling them.

The defense presented the expert testimony of Arthur Fayer, who is trained in the field of drug and alcohol abuse and works as a drug/alcohol assessor, finding appropriate treatment programs for people in custody who are ordered to enter treatment. Fayer explained that he was also a former drug user and dealer. Among other things, Fayer testified as to his understanding of the amount of drugs typically consumed by a heavy user and what he views as indications that someone is selling drugs. When presented with hypothetical situations mirroring the facts of Inzunza's case, Fayer opined that the woman in the hypothetical situations may have simply been a user of the drugs, while the male was the person doing the selling.

---

[2]    As the jury was informed through a stipulation, the count alleging failure to appear was based on Inzunza's failure to appear on November 9, 2018, after she was released from custody on bail, resulting in a bench warrant and her eventual remand into custody on December 12, 2018.

During closing argument, defense counsel argued that as between Inzunza and Flores, the People had not established beyond a reasonable doubt that Inzunza was the person selling the drugs, rather than merely using them, while Flores sold them.  Defense counsel accordingly urged the jury to find Inzunza guilty of the lesser included offenses of possession rather than convicting her of possession for the purpose of sale.

The jury found Inzunza guilty on all counts as charged.  The trial court imposed a sentence of five years, eight months, with an order that Inzunza be released on mandatory supervision after serving three years in custody.

## II.

## DISCUSSION

A.  *Inzunza Has Not Established Ineffective Assistance of Counsel*

Inzunza seeks reversal of her two convictions for possessing heroin for sale (Health & Saf. Code, § 11351; counts 1 and 6) and her two convictions for possessing methamphetamine for sale (Health & Saf. Code, § 11378; counts 2 and 4).  According to Inzunza, reversal is required because of certain statements that the prosecutor made during closing argument which constituted prosecutorial error.  The prosecutor's statements addressed (1) the element of possession; (2) the testimony of defense expert Fayer; and (3) the People's burden of proof.  According to Inzunza, she received ineffective assistance of counsel because defense counsel failed to object to the prosecutorial error and failed to request that the jury be admonished.

1.  *Applicable Legal Standards*

Before turning to the specific prosecutorial statements challenged by Inzunza, we review the applicable legal standards.  The law governing claims

6

of prosecutorial error is well established.[3]  As relevant here, " 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements [citation].' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.)  It is also improper to "resort to personal attacks on the integrity of opposing counsel" (*People v. Bell* (1989) 49 Cal.3d 502, 538) and to misstate the facts (*People v. Boyette* (2002) 29 Cal.4th 381, 435 (*Boyette*)).  "Improper comments violate the federal Constitution when they constitute a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.  [Citation.]  Improper comments falling short of this test nevertheless constitute misconduct under state law if they involve use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.  [Citation.]  To establish misconduct, defendant need not show that the prosecutor acted in bad faith.  [Citation.]  However, she does need to 'show that, "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' [Citation.]  If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*Cortez*, at p. 130.)

"A claim of prosecutorial misconduct is ordinarily preserved for appeal only if the defendant made 'a timely and specific objection at trial' and

---

[3]    We use the term "prosecutorial error" rather than "prosecutorial misconduct," although the terms are often used interchangeably.  As our Supreme Court has explained, " '[t]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667 (*Centeno*).)

requested an admonition. [Citations.] ' "The primary purpose of the requirement that a defendant object at trial to argument constituting prosecutorial misconduct is to give the trial court an opportunity, through admonition of the jury, to correct any error and mitigate any prejudice." [Citation.]' [Citation.] Consistent with that purpose, '[a] court will excuse a defendant's failure to object only if an objection would have been futile' [citation], or if an admonition would not have mitigated the harm caused by the misconduct." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 853.)

Here, it is undisputed that defense counsel made no objection to any of the statements that Inzunza identifies on appeal as constituting prosecutorial error. Inzunza does not contend that it would have been futile for defense counsel to object or that an admonition would have failed to mitigate the harm. Instead, recognizing that defense counsel did not preserve the issue for appeal, Inzunza argues that she received ineffective assistance of counsel because defense counsel did not object at trial to the alleged instances of prosecutorial misconduct.

" 'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' " (*Centeno*, *supra*, 60 Cal.4th at p. 674.) "When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have

8

been different.  When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Mai*, *supra*, 57 Cal.4th at p. 1009.)  " '[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one' [citation], and 'a mere failure to object to evidence or argument seldom establishes counsel's incompetence.' " (*Centeno*, *supra*, 60 Cal.4th at p. 675.)  Thus, although "[a] defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel," an "appellate record, however, rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored." (*People v. Lopez* (2008) 42 Cal.4th 960, 966 (*Lopez*).)

With these legal principles in mind, we turn to the three categories of comments by the prosecutor during closing argument on which Inzunza bases

her claim that defense counsel provided ineffective assistance by failing to object.

2.     *The Prosecutor's Statements About the Element of Possession*

The first instance of alleged prosecutorial error occurred during the prosecutor's initial closing argument.  Specifically, in addressing the elements of the counts alleging possession of a controlled substance for sale (heroin or methamphetamine), the prosecutor made the following statement:

> "So the law says for possession two or more people may possess something at the same time.  So I know sometimes it's contrary, right?  You are thinking possession.  You are thinking it's in my hand, it's in my pocket.  But that's not how the law defines it.  The law says obviously this item can be possessed either because of our control, because of our knowledge, because this is ours.  And that's why the law goes on to say a person does not have to actually hold or touch something to possess it.  It's enough if you have the right to control it either personally or through someone else.  So if you know about it, you are in a room with it, you are in a car with it, you possess it, right?  It's as simple as that.  It doesn't have to be on your person."

According to Inzunza, this argument improperly stated the law because *knowledge* of the presence of an illegal substance alone is not sufficient for possession to exist.[4]  Specifically, Inzunza contends that the prosecutor

---

[4]     The jury was instructed with CALCRIM No. 2302 with regard to the crime of possessing a drug for the purpose of sale.  The instruction clearly informed the jury that knowledge alone does not equate to possession, as *control* is necessary for possession:  "To prove that the defendant is guilty of this crime, the People must prove that:  [¶] 1.  The defendant possessed a controlled substance; [¶] 2.  The defendant knew of its presence; [¶] 3.  The defendant knew of the substance's nature or character as a controlled substance; [¶] 4.  When the defendant possessed the controlled substance, she intended to sell it or that someone else sell it; [¶] 5.  The controlled substance was [methamphetamine] [or] heroin; [¶] AND [¶] 6.  The controlled substance was in a usable amount. . . .  [¶] Two or more people may possess something

10

seemed to state that knowledge alone could establish possession when she said the following: (1) "So *if you know about it*, you are in a room with it, you are in a car with it, you possess it, right?" and (2) "The law says obviously this item can be possessed either because of our control, *because of our knowledge*, because this is ours." (Italics added.)

As we will explain, Inzunza has not established on direct appeal that defense counsel's failure to object to this statement constituted ineffective assistance.

First, defense counsel could have had a rational tactical reason for failing to object. (*Mai*, *supra*, 57 Cal.4th at p. 1009 ["[o]n direct appeal, a conviction will be reversed for ineffective assistance only if . . . the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission . . . ."].) Even assuming that the prosecutor's statement could be understood as improperly stating that mere *knowledge* of the presence of drugs establishes possession, defense counsel could have determined that it was not important to object because his strategy did not depend on arguing that Inzunza did not jointly *possess* the drugs with Flores. Instead of disputing possession, defense counsel argued that *regardless* of whether Inzunza and Flores jointly possessed the drugs, Inzunza was not guilty of possession for the purpose of sale because her personal intent was only to *use* some of the drugs, while Flores alone had the intent to *sell* them. For example, defense counsel explained, "When two people possess the same substance, the same bag, which they can do, right, two people can have possession, ownership, control of the same item, it's absolutely possible that

---

at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it, either personally or through another person."

11

one of them intends to do one thing, use, and one of them intends to do another thing, sell. And the person who intends to use doesn't really care what the other person does with their half, right? Ms. Inzunza wanted to get high." Defense counsel urged the jury to convict Inzunza in counts 1, 2, 4 and 6 of the lesser included offense of simple *possession*, rather than finding that she possessed the drugs *for the purpose of sale*. In light of the fact that defense counsel's focus was on *intent to sell* rather than on *possession*, defense counsel may have made the reasonable tactical decision that it would be better to forego an objection regarding the prosecutor's discussion of the element of possession rather than to risk antagonizing the jury by interrupting the prosecutor's argument to object.

Moreover, for two reasons, Inzunza has failed to establish that defense counsel's failure to object was prejudicial. First, because defense counsel did not specifically dispute that Inzunza jointly possessed the drugs with Flores, there is no reasonable probability that Inzunza would have received a more favorable result at trial if defense counsel had objected to the prosecutor's suggestion that mere knowledge is sufficient to establish possession. Second, to the extent that the prosecutor may have misled the jury about the element of possession, any confusion was likely cured by the trial court's response to a question from the jury during deliberations. Specifically, the jury asked, "If drugs are found in a room occupied by two people regardless of where they are found, are both in possession? Jury is looking for indepth [*sic*] definition of possession." The trial court responded: "Please see jury instruction number 2302 which provides: [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it, either personally or through another person." Because the jury was specifically informed in answer to its question that a person must have

12

control over something to possess it, it is not reasonably likely that the jury based its verdict on anything the prosecutor said during closing argument suggesting that knowledge alone was sufficient to establish possession.

3.      *The Prosecutor's Statements Relating to Fayer's Expert Testimony*

The next statement that Inzunza identifies as prosecutorial error was made during the prosecutor's rebuttal when explaining why the jury should reject defense counsel's reliance on Fayer's expert testimony to show that Inzunza may have possessed the drugs merely to use them. The prosecutor made the following statement in attempting to question Fayer's credibility:

> "But then we have the defense witness. . . . Even the defense called him in here to distract you, to mislead you. I could have asked that man, perfect scenario, right, like, he basically said unless it's a hand to hand, he would never assume it's sales. And that's because that's why they called him here, right, to mislead us. [¶] . . . [¶] He just wants to come up here and say things because he has a bias. He's obviously in favor of probably legalizing drugs, right? He's in favor of more different avenues. He doesn't really like the criminal prosecution. I mean I didn't see him have a hard time when [defense counsel] was talking, but I had to yell the 20 minutes I was examining him, and it's because he has that bias."[5]

Inzunza contends that this argument constituted prosecutorial error in two ways: (1) it improperly disparaged the integrity of defense counsel by suggesting he called a witness for the purpose of misleading the jury; and (2) it misstated the facts by (a) inaccurately describing Fayer as having testified that "unless it's a hand to hand, he would never assume it's sales"

---

[5]     The prosecutor's statement that she was required to yell during her examination of Fayer refers to the fact that, as Fayer disclosed during his testimony, he has compromised hearing, requiring him to ask counsel to repeat certain questions.

and (b) by stating that Fayer is "obviously in favor of probably legalizing drugs."

The argument fails on direct appeal because Inzunza has not established that defense counsel could have had no rational tactical purpose for failing to make an objection to the prosecutor's statements about Fayer. Defense counsel may have determined that the prosecutor's attempts to discredit Fayer were not persuasive and that an objection would simply make the jury wonder whether there might be some significance to the prosecutor's otherwise unpersuasive argument. (Cf. *People v. Williams* (1997) 16 Cal.4th 153, 215 [trial counsel may have decided not to object to certain testimony "because an objection would have highlighted the testimony and made it seem more significant"]; *People v. Huggins* (2006) 38 Cal.4th 175, 206 ["counsel could have preferred not to draw the jurors' attention to particular comments by the prosecutor by objecting to them"].) In light of that risk, defense counsel could reasonably have concluded that it was best to rely on the jury's ability to assess for itself whether it was persuaded by the prosecutor's arguments that defense counsel was trying to mislead and distract the jury by calling Fayer and that Fayer was a biased witness.

Moreover, defense counsel also reasonably could have concluded that the prosecutor's statements did not step over the line into prosecutorial error and thus did not warrant an objection that risked being overruled by the trial court. With respect to the contention that the prosecutor improperly disparaged defense counsel's integrity, "[a]n argument which does no more than point out that the defense is attempting to confuse the issues and urges the jury to focus on what the prosecution believes is the relevant evidence is not improper." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1302, fn. 47; see also *People v. Seaton* (2001) 26 Cal.4th 598, 663 [the prosecutor's argument

14

that the defense case was " 'ludicrous,' 'contrived,' 'concocted,' and 'bogus' " did not impugn counsel's integrity but rather commented on the evidence]; *People v. Medina* (1995) 11 Cal.4th 694, 759 [the prosecutor's argument that " 'any experienced defense attorney can twist a little, poke a little, try to draw some speculation, try to get you to buy something' " did not amount to an attack on counsel's integrity].)  In addition, "[a]rguments by the prosecutor that otherwise might be deemed improper do not constitute misconduct if they fall within the proper limits of rebuttal to the arguments of defense counsel." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1026.)  Based on these principles, defense counsel may have concluded that the prosecutor properly stated that defense counsel called Fayer to "distract" and "mislead" because the prosecutor was commenting on the value of the evidence defense counsel relied upon during his closing argument.

Next, with respect to the prosecutor's characterization of Fayer's testimony, "harsh and colorful attacks on the credibility of opposing *witnesses* are permissible.  [Citations.]  Thus, counsel is free to remind the jurors that a paid witness may accordingly be biased and is also allowed to argue, from the evidence, that a witness's testimony is unbelievable, unsound, or even a patent 'lie.' " (*People v. Arias* (1996) 13 Cal.4th 92, 162.)  " 'The prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence . . . .' " (*Boyette*, *supra*, 29 Cal.4th at p. 433.)  Defense counsel reasonably could have concluded that there was no basis to object because the prosecutor's comments about Fayer would be viewed by the trial court as a permissible attempt to disparage the credibility of an opposing witness by raising an inference that he was biased toward the defense.[6]

---

[6]     Moreover, although Inzunza contends that the prosecutor misstated the

15

In sum, Inzunza has not met her burden to establish on direct appeal that defense counsel was ineffective for failing to object to the prosecutor's statements about Fayer.

4.    *The Prosecutor's Statements About the People's Burden of Proof*

The final passage that Inzunza assigns as error was also delivered during the prosecutor's rebuttal argument. Specifically, the prosecutor stated the following:

> "Now, the defense talked a lot about Tylenol and Tylenol recall and they keep using the word 'possible,' right? My job isn't beyond a possible doubt. My job is beyond a reasonable doubt where we ask ourselves what is reasonable based on the evidence. It's not beyond all doubt. It's not beyond possible doubt. It's beyond a reasonable doubt.

> "But we're asking ourselves what is the truth? Because trials are not [a] search for doubt. They're [a] search for the truth.

> "And when we look at all the evidence in this case, when we look at the fact that Ms. Inzunza was in that hotel room with Mr. Flores, her boyfriend, there was drugs in that room, in her backpack, in that fridge, she had the baggies in two of her bags,

---

facts by stating that Fayer testified that "unless it's a hand to hand, he would never assume it's sales," defense counsel may have concluded that the statement was not objectionable because the prosecutor was accurately referring to the following colloquy between defense counsel and Fayer:

> "Q.    From your training and experience, are you able to determine whether or not somebody possesses a drug like methamphetamine or heroin for the purpose of sale or for personal use?

> "A.    Well, no one knows for sure [unless] we see them doing the selling part. If they have possession, we know they're in possession. So those are obvious in their face, prima facia. It's clearly that's the situation. Beyond that, we're looking for—I would—like I am right here, looking at inferences."

16

they had scales. When we ask ourselves what is reasonable just in that National City case alone, they are both drug dealers.

"And when we move forward 10 days later into the Coronado incident and we ask ourselves, what is reasonable, even if we don't have that scale, even if we don't have that $369, the fact that she had brand-new baggies right underneath her late at night, over a hundred grams of dope, and he has a knife in the back, they are drug dealers. That's the reasonable conclusion from the evidence."[7]

Inzunza contends that this argument misstated the People's burden of proof because it left the jury with the impression that the prosecution's burden would be met if it "proved that its interpretation of the evidence was *merely reasonable*" (italics added), instead of stating that the jury must be convinced beyond a reasonable doubt of Inzunza's guilt. Inzunza's argument relies on the principle that "it is error for the prosecutor to suggest that *a 'reasonable' account of the evidence* satisfies the prosecutor's burden of proof." (*Centeno*, *supra*, 60 Cal.4th at p. 672, italics added & omitted.)

We reject Inzunza's argument because we do not perceive the prosecutor's statement as improperly describing the People's burden of proof. In the first paragraph of the prosecutor's statement, she accurately explained

---

[7] The reference to "Tylenol and Tylenol recall" was based on the portion of defense counsel's closing argument that reminded the jury of a line of questioning pursued during jury voir dire about possibly tainted Tylenol. Defense counsel argued, "But here, we're not talking about putting the Tylenol on your shelf. We're talking about putting it on Ms. Inzunza's shelf. And the law says you can't go on probabilities even if they're small. You have to have evidence to rule out reasonable doubts. Actual evidence. Not, hey, let me speculate in the other direction, what the prosecution has been doing. But actual evidence to say, look, we can tell from these things that her intent was something other than to get high. And that hasn't been presented before you. It hasn't."

17

the People's burden of proof as being proof beyond a reasonable doubt.[8]  The remaining paragraphs of the prosecutor's statement plainly constitute her explanation of how the totality of the evidence should lead the jury to find that Inzunza possessed the drugs with the intent to sell them.  Specifically, as the prosecutor pointed out, defense counsel stated in his closing argument that the People had not met their burden of proof beyond a reasonable doubt because the evidence supported the "*possible*" conclusion that Inzunza intended to use the drugs, not sell them.[9]  The prosecutor responded by

_____

[8]     Inzunza contends that the first paragraph contained an error when the prosecutor said, "My job isn't beyond a possible doubt.  My job is beyond a reasonable doubt *where we ask ourselves what is reasonable based on the evidence*.  It's not beyond all doubt.  It's not beyond possible doubt.  It's beyond a reasonable doubt."  (Italics added.)  According to Inzunza, the italicized phrase improperly communicated that the burden of proof beyond a reasonable doubt could be met by *merely* showing "what is reasonable based on the evidence."  We reject the argument because the full context of the prosecutor's statement does not support Inzunza's reading.  When the entire portion quoted above is considered, it is clear that in stating "*we ask ourselves what is reasonable based on the evidence*," the prosecutor was reminding the jury it must look to the actual evidence presented at trial when making its reasonable doubt assessment.  The statement cannot reasonably be read as stating that a mere reasonable account consistent with guilt is sufficient to satisfy the People's burden to prove guilt beyond a reasonable doubt.

Inzunza also contends the prosecutor misstated the burden of proof by telling the jury that "trials are not [a] search for doubt.  They're [a] search for the truth."  We find no erroneous description of the prosecution's burden of proof in that statement.

[9]     For example, defense counsel argued, "When two people possess the same substance, the same bag, which they can do, right, two people can have possession, ownership, control of the same item, it's absolutely *possible* that one of them intends to do one thing, use, and one of them intends to do another thing, sell. . . .  Ms. Inzunza wanted to get high."  (Italics added.)  Defense counsel also argued that the People were merely "speculat[ing]" that Inzunza's "intent was something other than to get high."

arguing that "*the reasonable conclusion*" was that Inzunza intended to sell the drugs. (Italics added.) She did not argue that it was merely "*a* reasonable conclusion," but rather that it was "*the* reasonable conclusion." (Italics added.) The prosecutor therefore did not leave the jury with the impression that the People could satisfy its burden merely by establishing that a scenario consistent with guilt was "*a* 'reasonable' account of the evidence." (*Centeno*, *supra*, 60 Cal.4th at p. 672, italics added.)

Inzunza relies on *Centeno*, in which our Supreme Court disapproved of the prosecutor's statements that included this passage: " 'What you are looking at when you are looking at reasonable doubt is you are looking at a world of possibilities. There is the impossible, which you must reject, the impossible [*sic*] but unreasonable, which you must also reject, and the reasonable possibilities, and your decision has to be in the middle. It has to be based on reason. *It has to be a reasonable account.*' " (*Centeno*, *supra*, 60 Cal.4th at pp. 665-666, italics added.) Our Supreme Court acknowledged that its previous case law "approved the prosecutor's argument that the jury must ' "decide what is reasonable to believe versus unreasonable to believe" and to "accept the reasonable and reject the unreasonable" ' " because such a statement does not lessen the beyond a reasonable doubt burden of proof. (*Id*. at p. 672.) However, the prosecutor in *Centeno* erred because she "did not simply urge the jury to ' "accept the reasonable and reject the unreasonable" ' in evaluating the evidence before it. [Citation.] Rather, she confounded the concept of rejecting unreasonable inferences, with the standard of proof beyond a reasonable doubt. She repeatedly suggested that the jury could *find defendant guilty* based on a 'reasonable' account of the evidence. These remarks clearly diluted the People's burden." (*Id*. at p. 673.) The prosecutor's statements here were not like the statements disapproved in

19

*Centeno.* Nothing in the paragraphs we have quoted above communicated to the jury that it was permitted to find Inzunza guilty based merely on a reasonable account of the evidence. Rather, as is permitted, the prosecutor was arguing, based on the evidence, that "the jury must ' "decide what is reasonable to believe versus unreasonable to believe" and to "accept the reasonable and reject the unreasonable." ' " (*Id.* at p. 672.)

Accordingly, "[b]ecause the prosecutor's arguments discussed above were not improper, there was no reason for a defense objection. Therefore, the failure to object did not result in a violation of defendant's constitutional right to the effective assistance of counsel." (*Lopez, supra,* 42 Cal.4th at p. 968.)

B.   *Remand is Required to Allow the Trial Court to Decide Whether to Exercise Its Discretion Under Penal Code Section 654 to Choose Different Counts on Which to Impose Punishment*

At the time of Inzunza's sentencing, Penal Code section 654 provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the *longest potential term of imprisonment*, but in no case shall the act or omission be punished under more than one provision." (Former Pen. Code, § 654, subd. (a), italics added.) Effective January 1, 2022, Penal Code section 654 was amended pursuant to Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1) to provide the trial court with the discretion to choose the count for which it will impose punishment rather than requiring the trial court to select the count with the longest potential term of imprisonment. Specifically, Penal Code section 654 now provides in relevant part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions." (Pen. Code, § 654, subd. (a).)

20

Inzunza was sentenced pursuant to the former version of Penal Code section 654, which impacted Inzunza's sentence in two respects. First, the trial court determined that the conviction in count 6 for the possession of heroin for purposes of sale (Health & Saf. Code, § 11351) and in count 7 for the transportation of heroin for sale (*id.*, § 11352, subd. (a)), represented the same act or omission. The trial court therefore imposed a four-year term of punishment on count 7, and it stayed a three-year term of punishment on count 6. Second, the trial court determined that the conviction in count 4 for possession of methamphetamine for purposes of sale (*id.*, § 11378) and the conviction in count 5 for transportation of methamphetamine for sale (*id.*, § 11379, subd. (a)) represented the same act or omission. The trial court therefore imposed a concurrent three-year term of punishment on count 5, and it stayed a concurrent two-year term of punishment on count 4.[10]

Had the current version of Penal Code section 654 been in effect at the time of Inzunza's sentencing, the trial court would have had the discretion to (1) impose the three-year term on count 6 while staying the four-year term on count 7; and (2) impose the concurrent two-year term in count 4 while staying the concurrent three-year term in count 5.

Inzunza contends that because her case is not yet final on appeal, she is entitled to the benefits of the amended version of Penal Code section 654 pursuant to the principles of retroactivity set forth in *In re Estrada* (1965) 63 Cal.2d 740.

---

[10] Inzunza's aggregate sentence was five years, eight months, based on a four-year term for count 7 (transportation of heroin on April 16, 2018 in violation of Health & Saf. Code, § 11352, subd. (a)), a consecutive one-year term for count 1 (possession of heroin on April 6, 2018 in violation of Health & Saf. Code, § 11351), and a consecutive eight-month term on count 3 (failure to appear while on bail in violation of Pen. Code, § 1320.5).

The People agree that the amended version of Penal Code section 654 applies retroactively to cases not yet final on appeal. As the People explain, "In an analogous situation, appellate courts held that the recent statutory amendments to [Penal Code] sections 12022.5 and 12022.53, which granted trial courts discretion to strike firearm enhancements in the interest of justice pursuant to [Penal Code] section 1385, were retroactive to non-final judgments. (See, e.g., *People v. Valenzuela* (2018) 23 Cal.App.5th 82, 87-88; *People v. Woods* (2018) 19 Cal.App.5th 1080, 1090-1091; *People v. Robbins* (2018) 19 Cal.App.5th 660, 678-679.) The reasoning of those cases applies in this case to Assembly Bill No. 518. [¶] Because [Inzunza's] sentence in counts 4 and 6 was stayed pursuant to [Penal Code] section 654, and the judgment was not final on January 1, 2022, the amendment applies retroactively to her on the date Assembly Bill No. 518 took effect."

We concur with the parties' conclusion that the amended version of Penal Code section 654 applies retroactively to non-final cases. (See, e.g., *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308 [" 'in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not' "].)

Inzunza contends that we should remand this matter for resentencing so that the trial court can determine whether to exercise its discretion to impose punishment on count 6 rather than count 7, and on count 4 rather than count 5. The People disagree that a remand is warranted. According to the People, remand would be a futile act because the record clearly indicates that the trial court would not exercise its discretion to impose a different sentence.

22

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) "Remand is required unless the record reveals a clear indication that the trial court would not have reduced the sentence even if at the time of sentencing it had the discretion to do so. [Citation.] Without such a clear indication of a trial court's intent, remand is required when the trial court is unaware of its sentencing choices." (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.) As we will explain, the record does not clearly indicate that the trial court categorically would not exercise its discretion to impose punishment on count 6 rather than count 7, or on count 4 rather than count 5.

In contending that remand would be futile, the People point to the fact that the trial court rejected defense counsel's suggestion that it impose an aggregate four-year term of punishment rather than the five-year, eight-month term recommended by the probation department. However, we do not view this history as a clear indication that the trial court categorically would not, on remand, decide to impose the three-year term of punishment for count 6 and to stay the four-year term of punishment for count 7, resulting in an aggregate sentence of four years, eight months (instead of the current aggregate sentence of five years, eight months). For one thing, a term of four years, eight months is longer than the four-year term suggested by defense counsel at sentencing. More importantly, defense counsel's suggested four-year term was based on a proposal to impose a sentence of four years (presumably on count 7) and to run *all* of the other counts concurrently. Although the trial court was not completely clear in explaining why it

23

rejected defense counsel's suggestion, as we understand the trial court's comments, it did so because it wanted to separately punish the criminal acts that took place on two different dates: (1) the possession of drugs in the motel room on April 6, 2018; and (2) the possession and transportation of the drugs on April 16, 2018. The trial court explained, "It is just something about the being arrested for sales and two weeks later being in the same situation," leading it to impose "the consecutive terms showing the two separate incidents." If, on remand, the trial court were to impose punishment on count 6 rather than count 7, and on count 4 rather than count 5, it would still be separately punishing the criminal acts committed on April 6, 2018 and April 16, 2018.

The People also argue that remand would be futile because the trial court expressed a desire to split Inzunza's sentence in a manner that she served time in custody but was also afforded meaningful time on mandatory supervision for treatment and recovery. We reject the argument because the trial court could reasonably decide that an aggregate term of four years, eight months, rather than an aggregate term of five years, eight months would still achieve those goals.

We accordingly remand this matter for the trial court to decide whether to exercise its discretion under the amended version of Penal Code section 654 to resentence Inzunza by imposing punishment on count 6 rather than count 7, and on count 4 rather than count 5. We express no opinion as to how the trial court should exercise its discretion on remand.

DISPOSITION

This matter is remanded for resentencing to allow the trial court to decide whether to exercise the discretion conferred by the recent amendment to Penal Code section 654.  In all other respects, the judgment is affirmed.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


GUERRERO, J.

25